Charles Bryant **TIDMORE**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 12-96-00370-CR.

Court of Appeals of Texas, Tyler.

March 31, 1998.

Rehearing Overruled April 29, 1998.

Discretionary Review Refused Sept. 16, 1998.

---

Fred Head, Athena, for appellant.

Donna R. Bennett, Athens, for appellee.

Before HOLCOMB and HADDEN, JJ., and BASS, Retired Justice, Twelfth Court of Appeals, Tyler, sitting by assignment.

HOLCOMB, Justice.

Charles Bryant Tidmore ("Appellant"), who was charged with the offense of murder, was acquitted of that crime by the jury, but was convicted of voluntary manslaughter. The jury assessed his punishment at twenty years' imprisonment. Based upon complaints of improper jury instruction, legal and factual insufficiency, erroneous exclusion of witness testimony, failure to grant a mistrial and a motion for new trial, Appellant brings this appeal. We will affirm.

■ In his first, second, fourth and fifth points of error, Appellant complains that there was legally or factually insufficient evidence to support the prosecution's requested instruction on voluntary manslaughter. Appellant argues that the Court of Criminal Appeals has consistently held that a two-prong test is to be met before a jury charge on a lesser included offense must be given: 1) the lesser included offense must be included within the proof necessary to establish the offense charged; and 2) some evidence must exist in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of that offense, and not the greater offense.[1] The evidence may be strong, weak, unimpeached, or contradicted.[2] Regardless of which litigant requests a lesser included offense instruction, however, that instruction must not constitute an invitation to the jury to reach an irrational verdict.[3] Because Appellant presents us with an evidentiary question, a review of the evidence is necessary.

■ Appellant leased a trailer house and land from Howard Burson ("Howard"), but failed to make several payments. Howard sent him a letter telling him to vacate the premises within ten days. On the eleventh day, Howard, accompanied by his son Rex Burson ("Rex") and Patricia Carter ("Patri-

1. *Rousseau v. State,* 855 S.W.2d 666, 673 (Tex. Cr.App.1993).

2. *Id.* at 672.

3. *Arevalo v. State,* 943 S.W.2d 887, 890 (Tex.Cr. App.1997).

cia"), went to the trailer house, but Appellant had not moved out. Appellant was not at home, but they located him at his father's house in a neighboring town. When they arrived, Rex and Howard went to the front door. Patricia stayed in the truck with the motor running, and the air conditioning and the radio on. Howard testified that he asked Appellant what his intentions were and he stated that he was moving but needed more time because his father was sick. Appellant became very agitated and began screaming at Howard. Patricia could hear the yelling over the sound of the radio. Rex told Appellant not to speak to his father in that manner. Appellant hit either Rex or Howard through an opening in the storm door, then threw the door open, knocking Howard down. Either Rex or Howard picked up a gas can from the porch and threw it at Appellant, who then attacked Rex. Appellant and Rex wrestled in the yard and then Howard heard a "pop." He asked Rex if he'd been shot, to which Rex said "yes." Howard and Patricia took Rex to the hospital where he was declared dead.

Appellant testified that when he was called to the door at approximately 10:00 p.m., he put a gun in his pants at the small of his back because of the lateness of the hour. Howard began demanding his money, but Appellant maintained that he was entitled to more than ten days notice. Howard then hit him through the missing pane in the door, and Rex did likewise. Appellant pushed the door into the two men and tried to shut the main door. Rex kicked the door open and Appellant retreated to the kitchen. Someone threw a gasoline can through the door and hit Appellant's father. Appellant went back toward the door to get between his father and the two men. He could smell gasoline and was afraid that Rex and Howard were going to burn his house. The two men entered the house, grabbed Appellant by the arm and hair, dragged him onto the porch and began to beat him. Rex yelled at Appellant, "You're going to die!" Appellant pulled the gun and began to swing the gun at his attackers. They were choking him and

pounding his head on the concrete sidewalk. Appellant admitted that he was afraid for his life, that he "panicked," and that he didn't mean to kill Rex, but that he pulled the trigger in order to keep Rex and Howard from killing him. The first time he pulled the trigger, his gun misfired. Appellant tried again and it fired. He shot himself in the arm, but did not know that he had shot Rex. Rex then got off of Appellant, kicked the gun out of his hand and kicked him in the mouth.

Appellant's father testified that he saw either Rex or Howard grab Appellant by the arm and the hair and jerk him through the door. He said that a can of gasoline came flying through the door and hit him. He admitted that no attempt was made to light the gasoline. Appellant's father further stated that the two men threw Appellant to the ground and were beating his head against the sidewalk. Rex was yelling "you're going to die" to Appellant.

The chief of police testified that on the night of the killing he found an *empty* gas can on the front porch, and no gas can in the house. Police photographs showed that Appellant had only superficial scratches on his back, redness around his neck and the self-inflicted gunshot wound to his arm after the shooting. A doctor testified that Rex, on the other hand, suffered from numerous blunt force injuries to his head, as well as the gunshot wound. The bullet had nicked Rex's jugular vein, passed through his lung, and exited through his back.

Appellant argues on appeal that a charge of voluntary manslaughter should not have been submitted to the jury. We disagree. A charge on voluntary manslaughter should be given, upon request by the State or defense, when there is any evidence that the defendant acted under the "immediate influence of sudden passion arising from adequate cause."[4] Sudden passion is a passion directly caused by and arising out of provocation by the individual killed or by another person

---

4. *Sattiewhite v. State*, 786 S.W.2d 271, 287 (Tex. Cr.App.1989); TEX.PEN.CODE ANN. § 19.04(a) (Vernon 1974) (Acts 1973, 63rd Leg., p. 883, ch. 399, § 1 *repealed* by Acts 1993, 73rd Leg., ch. 900, § 1.01).

acting with the person killed.[5] The passion must arise at the time of the offense and not occur solely as the result of former provocation.[6] Adequate cause is a cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper sufficient to render the mind incapable of cool reflection.[7] Under the law at the time of the killing, sudden passion, or the lack thereof, constituted an implied element of the offense of murder.[8]

Howard testified that Appellant flew into a rage and began screaming and yelling at him when he insisted that Appellant vacate the property with only ten days notice. Rex's girlfriend corroborated Appellant's vocal and violent reaction. Howard further stated that Appellant threw the door open so hard that it knocked him down, and then Appellant then attacked Rex. Howard admitted that he threw a gas can into the house. Conversely, Appellant testified that both Howard and Rex attacked *him*, and that his head was beaten against the concrete sidewalk. He also stated that Rex threatened to kill him. At that point, Appellant "panicked" and fired his gun. Appellant testified that he was in fear for his life and for the lives of his father and brother. We conclude that there was some evidence that Appellant was provoked by Howard's and Rex's appearance at his father's residence and by Howard's demands to vacate his homestead. We also deem that the testimony of the verbal and physical attack resulting from this confrontation constituted some evidence of an adequate cause to render a person of ordinary temper incapable of cool reflection. Consequently, since a jury could rationally find that Appellant was *guilty only of that lesser offense*, we hold that the trial court did not err when it in-

structed the jury on voluntary manslaughter. We overrule points of error one, two, four and five.

In his third and sixth points of error, Appellant complains that there was legally or factually insufficient evidence to support the judgment. The issues which the jury considered, and which we must now review, are self-defense and the influence of sudden passion on the commission of the crime. The following is a brief discussion of each.

■ In regards to self-defense, a person is justified in using force against another person "when and to the degree" that the person "reasonably believes the force is immediately necessary" for protection against that other person's use or attempted use of unlawful force.[9] The use of force is not justified if the actor is responding to force that he himself provoked, unless the actor abandons the encounter and the other nevertheless continues or attempts to use unlawful force against the actor.[10] Intent can be inferred from acts, words, and conduct of the accused.[11] The accused's intent may also be ascertained from the methods used and the wounds inflicted,[12] as well as from circumstances surrounding the use of a weapon.[13] The Penal Code justification for self-defense focuses on the existence of some necessity, the circumstances under which the force was used, the degree of force used, and the type of conduct against which the force was used. The amount of force used must be in proportion to the force encountered. Special rules govern the use of deadly force in self-defense. Deadly force means force that is intended or known by the actor to cause death or serious bodily injury, or force that is capable of causing death or serious bodily injury in the

---

5. Tex.Pen.Code Ann. § 19.04(b) (Vernon 1974) (Acts 1973, 63rd Leg., p. 883, ch. 399, § 1 *repealed* 1994).

6. *Id.*

7. Tex.Pen.Code Ann. § 19.04(c) (Vernon 1974) (Acts 1973, 63rd Leg., p. 883, ch. 399, § 1 *repealed* 1994); *McBride v. State,* 862 S.W.2d 600, 606 (Tex.Cr.App.1993).

8. *Johnson v. State,* 815 S.W.2d 707, 710 (Tex.Cr. App.1991).

9. Tex.Pen.Code Ann. § 9.31(a) (Vernon 1974).

10. Tex.Pen.Code Ann. § 9.31(b)(4) (Vernon 1974).

11. *Dues v. State,* 634 S.W.2d 304, 305 (Tex.Cr. App.1982).

12. *Womble v. State,* 618 S.W.2d 59, 64 (Tex.Cr. App.1981).

13. *Cordova v. State,* 698 S.W.2d 107, 112 (Tex.Cr. App.1985), *cert. denied,* 476 U.S. 1101, 106 S.Ct. 1942, 90 L.Ed.2d 352 (1986).

manner of its use or intended use.[14]   A person is entitled to use deadly force in self-defense against another only if all three of the following conditions are met:

> (1) if he would be justified in using [non-deadly] force against the other under Section 9.31 of this [Penal] code;
>
> (2) if a reasonable person in the actor's situation would not have retreated; and
>
> (3) when and to the degree he reasonably believes the deadly force is immediately necessary:
>
>> (A) to protect himself against the other's use or attempted use of unlawful deadly force; or
>>
>> (B) to prevent the other's imminent commission of ... murder ...[15]

Deadly force is not immediately necessary if a reasonable person in the position of the defendant would use some available nondeadly method of self-defense.  In such circumstances, a defendant's use of deadly force would not be justified.[16]

■ The defendant has the initial burden of producing some evidence to justify submission of a self-defense instruction.  The State must then persuade the jury beyond a reasonable doubt that the defendant did not act in self-defense.[17]  Although the State has the burden of persuasion, it does not have the burden of producing evidence to affirmatively refute self-defense.[18]

However, once raised by the evidence, the State had the burden to disprove voluntary manslaughter beyond reasonable doubt.[19]  There were various bases upon which a properly instructed jury could have rejected sudden passion, though the issue was undoubtedly raised by the evidence.  If the jury had found that there was no provocative conduct, or at least none occurring at the time of the offense, then there could be no finding of adequate cause.  Alternatively, the jury could have found that there was provocative conduct, even adequate to render an ordinary man incapable of cool reflection, but that nonetheless, the defendant himself acted coolly and deliberately.  Finally, it could have found that there was provocative conduct, that the defendant was in fact provoked, but that the provocation was not such as would render a man of ordinary temper incapable of cool reflection.[20]

■ These points of error call for both a legal and factual sufficiency review.  The standard of review for the legal sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt.[21]  An appellate court should uphold the jury's verdict "unless it is found to be irrational or unsupported by more than a 'mere modicum' of the evidence."[22]  In reviewing the factual sufficiency of the elements of an offense, the court of appeals "views all the evidence without the prism of 'in the light most favorable to the prosecution' and sets aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust."[23]  The sufficiency of the evidence is determined from the cumulative effect of all the evidence; each fact in isolation need not establish the guilt of the accused.[24]  The

---

14.  TEX.PEN.CODE ANN. § 9.01(3) (Vernon 1974).

15.  TEX.PEN.CODE ANN. § 9.32(a) (Vernon 1983).

16.  *See* TEX.PEN.CODE ANN. § 9.32(a)(3) (Vernon 1983).

17.  *Saxton v. State*, 804 S.W.2d 910, 913 (Tex.Cr.App.1991).

18.  *Id.*

19.  *Johnson*, 815 S.W.2d at 710–11.

20.  *See Gold v. State*, 736 S.W.2d 685, 699 (Tex.Cr.App.1987), *overruled on other grounds*, 785 S.W.2d 824 (Tex.Cr.App.1989); *see also Bryant v. State*, 482 S.W.2d 270, 271–72 (Tex.Cr.App. 1972).

21.  *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); *Williams v. State*, 937 S.W.2d 479, 482 (Tex.Cr. App.1996).

22.  *Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Cr. App.1988).

23.  *Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Cr. App.1996).

24.  *Alexander v. State*, 740 S.W.2d 749, 758 (Tex. Cr.App.1987).

standards set forth above are the same for both a direct and circumstantial evidence case, and the prosecution need not exclude every other reasonable hypothesis except the guilt of the accused.[25]

The jury, as the trier of fact, is the sole judge of the credibility of the witnesses and the weight to be given their testimony.[26] The jury is free to believe or disbelieve any witness.[27] It may resolve conflicts in the evidence, accept one version of the facts, disbelieve a party's evidence, and resolve any inconsistencies in favor of either party.[28] The jurors are also entitled "to draw reasonable inferences from basic facts to ultimate facts."[29] The jury may use common sense and apply common knowledge, observation, and experience gained in the ordinary affairs of life when giving effect to the inferences that may reasonably be drawn from the evidence.[30] If conflicting inferences exist, we must presume the trier of fact resolved any conflict in favor of the prosecution.[31]

After carefully reviewing the record as outlined above, we are persuaded that there was both legally and factually sufficient evidence to support the verdict. Although there was *some* evidence that Appellant was defending himself when he shot Rex, there was also evidence that Appellant was the aggressor. For example, Rex had more serious injuries to his head than did Appellant. There was evidence that Howard provoked Appellant when he came to his house and, as he perceived it, unlawfully demanded that he move, causing him to become extremely angry and violent. In addition, there was evidence that Appellant either became so fearful of losing his life, or so incensed by the fight with Rex that he "panicked" and lost his ability to think and act clearly. We conclude that the jury could have reasonably determined that Appellant intended to shoot the victim; that either Appellant was the aggressor and was not defending himself when he shot Rex, or that he was defending himself but his use of deadly force was unjustified; and that he killed under the influence of sudden passion arising from adequate cause. We hold that the evidence was both legally and factually sufficient to support the judgment and that the verdict was not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. We overrule points of error three and six.

Appellant argues in his seventh point of error that the trial court erred when it would not allow Connie Ward ("Connie"), Howard's third wife, to testify. Outside of the presence of the jury, Appellant stated that Connie would testify concerning Howard's aggressive nature. He argued that her testimony as to specific instances of violence was relevant to show Appellant's reasonable belief that deadly force was immediately necessary to protect himself when Howard and Rex attacked him. The State objected on the grounds of improper impeachment of a witness under Rules 608(b) and 404(a)(3), Rules of Criminal Evidence. The court sustained the objection, at which time Appellant made an offer of proof. For purposes of this appeal, however, it is not necessary for us to determine whether or not Connie's testimony was admissible. Neither by offer of proof nor through Appellant's testimony did the defense show that Connie had previously told Appellant about Howard's propensity for violence. Consequently, Connie's testimony was without relevance as to Appellant's state of mind. Point of error seven is overruled.

In his eighth point of error, Appellant complains that the trial court erred when it failed to instruct the jury on defense

---

**25.** *Sonnier v. State*, 913 S.W.2d 511, 516 (Tex.Cr. App.1995); *Fields v. State*, 932 S.W.2d 97, 103 (Tex.App.—Tyler 1996, pet. ref'd).

**26.** *See Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Cr.App.1986), *cert. denied*, 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988).

**27.** *Id.*

**28.** *McIntosh v. State*, 855 S.W.2d 753, 763 (Tex. App.—Dallas 1993, pet. ref'd).

**29.** *Id.*

**30.** *Wawrykow v. State*, 866 S.W.2d 87, 88–89 (Tex.App.—Beaumont 1993, pet. ref'd).

**31.** *Turro v. State*, 867 S.W.2d 43, 47 (Tex.Cr.App. 1993).

of property. He argues that when an issue is raised by the evidence and an instruction is requested, the trial court must instruct the jury accordingly and its failure to do so is reversible error.[32] In order to warrant an instruction on the use of deadly force to protect property, however, a defendant must introduce evidence that he reasonably believed that deadly force was immediately necessary to prevent the victim's commission of one of the offenses listed in the Texas Penal Code.[33] Appellant contended at the charge conference that there was evidence that he was using deadly force to protect his father's property from arson, one of the listed offenses. A person commits arson if he starts a fire with intent to destroy or damage any building or habitation when he is reckless about whether the burning or explosion will endanger the life of some individual or the safety of the property of another.[34]

Although there was evidence that Howard or Rex threw a gasoline can into Appellant's father's house, there was no evidence that either of the Bursons intended to commit arson. The gasoline can belonged to Appellant's father, and there was no indication that Howard, who admitted to throwing the can, even knew that gasoline was contained therein. There was no evidence that either of the Bursons had matches or a lighter on his person. No one testified that the Bursons attempted to enter the house in order to ignite the gasoline. There was no evidence that the Bursons had a grudge against the owner of the property, Appellant's father, or that they intended to destroy or damage his house. Nothing in the record supports a conclusion that arson was in imminent danger of being committed. And there was no evidence that Appellant reasonably believed that deadly force was immediately necessary to prevent the victim's commission of arson. To the contrary, all the evidence indicated that Appellant's reason for discharging his gun was either rage or to protect himself from what he perceived as harm to himself.

Consequently, we hold that there was no more than a 'mere modicum' of evidence to support a jury instruction on defense of property. We overrule point of error eight.

■■■■ Appellant maintains in his ninth point of error that the trial court erred in overruling his motion for mistrial based on "fundamentally erroneous" closing argument of the prosecutor. During jury argument, the prosecutor stated: "Well, I ask you this, ladies and gentlemen: What's human life worth? Worth five years? Worth ten years? Worth twenty years? If it were a member of your family or someone you loved, how would you feel about ten years probation? Five years probation? Two years probation? Would you think that was enough? ... But I think a human life, any human life is certainly worth twenty years. I think mine is. I think yours is." Appellant did not object. In general, the approved areas of jury argument are summation of the evidence, reasonable deduction from the evidence, answer to argument of opposing counsel, and a plea for law enforcement.[35] The arguments of the prosecutor in the case at bar cannot be said to fall within any of the permissible areas.

■■■■ Although this jury argument constituted error, a defendant's "right" not to be subjected to erroneous jury argument is one of those rights that is forfeited by a failure to insist upon it.[36] We hold, therefore, that Appellant's failure to object to the prosecutor's argument, as well as his failure to request an instruction to disregard forfeits Appellant's right to complain about the argument on appeal. Appellant maintains that this is a violation of due process, to counsel and to trial by jury under the U.S. Constitution, as well as a violation of due course of law, to counsel and trial by jury under the Texas Constitution and should receive further consideration by the Courts of Appeals. Since we agree with the Court of Criminal Appeals' opinion in *Cockrell*, however, we

32. *Chapman v. State,* 921 S.W.2d 694, 694–95 (Tex.Cr.App.1996).

33. Tex.Pen.Code Ann. § 9.42 (Vernon 1994).

34. Tex.Pen.Code Ann. § 28.02 (Vernon 1994).

35. *Shannon v. State,* 942 S.W.2d 591, 597 (Tex. Cr.App.1996).

36. *Cockrell v. State,* 933 S.W.2d 73, 89 (Tex.Cr. App.1996).

find it unnecessary to revisit this issue. We overrule point of error nine.

In his last two points of error, Appellant argues that the trial court erred in denying his motion for new trial based on jury misconduct and the unrevealed hatred, prejudice and bias of the judge against Appellant's trial attorney. Appellant filed a motion for new trial based upon jury misconduct within thirty days after the date sentence was imposed. Appellant's counsel stated in his verification that he was unable to secure affidavits from jurors even after they told him of alleged misconduct. He filed an amended motion based upon the trial judge's bias and hatred thirty days later. Both motions contained a fiat, but neither were signed by the judge. Appellant requested a hearing on his motion by letter to the court 82 days after sentence was imposed. That same day, the court informed Appellant that his motion for new trial had been overruled by operation of law.

A motion for new trial and a hearing on a motion such as Appellant's is necessary to preserve a point for appeal if the underlying facts do not otherwise appear in the record.[37] And a trial court does not err by failing to hold a hearing where none is requested.[38] Furthermore, a trial court has no authority to grant an untimely motion for new trial.[39] Since Appellant's amended motion was untimely filed, Appellant failed to request a hearing on either motion, and no hearing was held before the motion was overruled by operation of law, we hold that the trial court did not deny, and therefore did not err in denying, Appellant's motion for new trial. We overrule points of error ten and eleven.

We *affirm* the trial court's judgment.

---

**37.** TEX.R.APP.P. 30(a), 31(c)(1) (S.Ct. and Tex. Crim.App.1986, amended 1997); *Green v. State,* 754 S.W.2d 687 (Tex.Cr.App.1988).

**38.** *Martin v. State,* 823 S.W.2d 395, 397 (Tex. App.—Texarkana 1992), *pet. ref'd,* 830 S.W.2d 137 (Tex.Cr.App.1992).

**39.** *Drew v. State,* 743 S.W.2d 207, 222–23 (Tex. Cr.App.1987).