OPINION HEADING PER CUR 









                NO. 12-04-00156-CR

 

IN THE COURT OF APPEALS

 

TWELFTH COURT OF APPEALS
DISTRICT

 

TYLER, TEXAS

 

 

MATEO
BENITEZ,  §          APPEAL FROM THE 145TH

APPELLANT

 

V.        §          JUDICIAL
DISTRICT COURT OF

 

THE
STATE OF TEXAS,

APPELLEE   §          NACOGDOCHES
COUNTY, TEXAS

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 

 



MEMORANDUM
OPINION 








            Mateo Benitez appeals his conviction for engaging in
organized criminal activity, for which he was sentenced to imprisonment for
thirty-five years.  Appellant raises two
issues on appeal.  We affirm.

Background

            Appellant was indicted on two counts of engaging in
organized criminal activity.  See Tex. Pen. Code Ann. § 71.02(a)(1)
(Vernon 2003).  According to the
Nacogdoches Police Department, Appellant was a member of the Latin Kings, a
nationwide gang governed by a written document, the Latin King Manifesto.  

            Robert Killingsworth, a detective with the Nacogdoches
Police Department, testified that the Latin Kings were identified as a criminal
street gang in Texas in 1998.  He stated
that the Latin Kings were organized with a military style hierarchy, including
a statewide leader, a regional leader, and local chapters.  He testified that the local chapter in
Nacogdoches on December 17, 2002 had approximately thirty-six gang members.  








            Killingsworth also testified that the Barrios Trese gang
or Southside Thirteen, a Nacogdoches gang, is a rival to the Latin Kings.  This gang was formed as a defensive mechanism
to the Latin Kings.  According to
Killingsworth, its members spend a lot of time showing disrespect toward the
Latin Kings. 

            On December 17, 2002, Appellant drove his red car to a
house at 115 East Smith Street where members of the Southside Thirteen gang
lived.  He indicated to one of the
Southside Thirteen members, Louis Zarate, that he wanted to fight him.  As this confrontation between Appellant and
Zarete began to escalate, Rafael Hernandez threw a brick through a window of
Appellant’s car.  Appellant stated that “this
ain’t going to stay like this.”  Paul
Gonzalez (“Paul”), one of the Southside Thirteen gang members who witnessed
these events, testified that he believed Appellant’s statement meant that he
planned to return in response to these actions. 


            Thomas Gonzalez (“Thomas”) was also a member of Latin
Kings in Nacogdoches at that time.  He
was summoned on the evening of December 17 to the home of fellow gang member
Ivan Coulston.  Thomas met Appellant,
Coulston, and another Latin King named “Chino.”[1] Thomas testified that, after this initial
meeting, he went home to gather guns to give to Appellant, Coulston, and “Chino.”  He stated that he remembered “Chino” taking a
.9 millimeter and Appellant taking a .45 automatic and a .380 automatic.  Thomas gave Coulston an SKS rifle.  Thomas also provided Appellant with a pair of
blue gloves.  Then he drove the three to
the Lone Star employee parking lot. 
According to Thomas, Appellant, Coulston, and “Chino” left his vehicle
and went up a wooded hill facing south from the house at 115 East Smith Street.

            Around 9:00 o’clock on December 17, individuals at 115
East Smith Street threw beer bottles at a passing red automobile that they
mistakenly believed to be Appellant’s. 
After a  9-1-1 call to the
Nacogdoches Police Department, Officer Robert Mobley was dispatched to 115 East
Smith Street.  Mobley directed the
individuals at the house to clean up the broken beer bottles on the road.  However, he did not arrest anyone.  Mobley testified that he remained on patrol
in the area.  Around 10:30, he noticed
some movement in a wooded area on the hill directly across from 115 East Smith
Street.  Mobley said this movement caught
his attention because it was a peculiar activity for an area with no houses or
businesses.  At that point, he heard
several gun shots and saw muzzle blasts coming from the top of the hill.[2]  Mobley stated that these shots came from at
least two firearms and one was clearly closer to him.  He immediately called for police backup on
his radio and drove toward the Lone Star employee parking lot.  In the parking lot, Mobley observed a gold
Ford Aerostar van parked near the woods. 
He testified that he saw two, possibly three, subjects coming out of the
woods running toward the van.  Mobley
identified two of them as Hispanic males. 


            Mobley testified that he got out of his police car,
identified himself as a peace officer, and advised the three subjects to stop
and get on the ground.  According to
Mobley, the three subjects  turned around
and went back into the woods.  However,
Thomas, the driver of the van, got out of the van and laid down on the ground
as Mobley instructed.  At this time,
police backup arrived to assist Mobley in securing Thomas and the van.  

            Nacogdoches police officer Jeff Luman also responded to
Officer Mobley’s call for help.  As he
arrived in the vicinity of the shooting, he encountered two men walking down
the street.  Luman determined that these
two men were not suspects, but they recounted the earlier confrontation between
Appellant and the occupants of 115 East Smith Street.  The two men, unidentified in the record, gave
Luman the address of Appellant’s former home on South Fredonia.  Luman went to the South Fredonia house and
found a red Jeep Cherokee parked on the grass behind the house.  Coulston was found hiding in the vehicle.  

            The next day, December 18, Troy Mach, a Nacogdoches
police detective, testified that he followed the trail up the hill where the
persons were believed to have been shooting. 
Mach testified that he found two firearms, a .45 automatic and a .380
automatic, laying on top of each other in a small ditch beside the trail.  He also testified that he found a pair of
blue gloves in the bushes at the corner of Smith and South streets.  Jerry Stone, a technical services officer for
the Nacogdoches Police Department, testified that he found six Winchester .45
casings on top of the hill, south of 115 East Smith Street.  Russell Johnson, a Department of Public
Safety firearms examiner, testified that the .45 fired the six shots for the
spent casings.  Stone testified that the
.380 had been fired, but that the shell casings were jammed in the gun.  No spent .380 shell casings were found.  Marcus Madden, a patrol officer for the
Nacogdoches Police Department, testified that on February 2, 2003, an SKS rifle
was found on the hill.[3] 

            Dominga (“Dominga”) Gonzalez testified that she was shot
in the chest during the shooting.  Her
boyfriend, Hernandez, testified that he was shot in the foot at the same
time.  Paul testified that, at the time
of the shooting, he took cover under a van. 
After the shooting stopped, he chased the shooters.  Paul recognized Appellant because of the way
he ran and because he was wearing the same clothes as he had worn earlier in
the day.  Paul also said that he had
played soccer with Appellant since he was ten years old and recognized
Appellant’s run.[4]  According to Paul, there was enough light
that he recognized Appellant’s face when Appellant turned around to look at
him.  Paul did not continue chasing
Appellant because the police arrived.  

            The jury found Appellant guilty of two counts of engaging
in organized criminal activity as charged in the indictment and assessed
punishment at thirty-five years of imprisonment.  Appellant timely filed this appeal. 

 

Sufficiency of the Evidence

            In his first issue, Appellant challenges the sufficiency
of the evidence to support the jury’s finding that he was engaged in organized
criminal activity.  Appellant
specifically contends that no witness actually saw Appellant participate in the
shooting and that his mere presence at the scene of the alleged offense is not
sufficient to sustain a conviction. 
Appellant did not specifically state whether he was challenging legal
sufficiency, factual sufficiency, or both. 
Therefore, we will treat this issue as a challenge to both the legal and
the factual sufficiency of the evidence.

Standard of Review

            In reviewing a challenge to the legal sufficiency of the
evidence, we review the evidence in the light most favorable to the verdict to
determine whether any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.  See Jackson v. Virginia, 443
U.S. 307, 318-19, 99 S. Ct. 2781, 2789, 61 L. Ed.2d 560 (1979); Young v.
State, 14 S.W.3d 748, 753 (Tex. Crim. App. 2000). In reviewing the
evidence for legal sufficiency, an appellate court does not reweigh the
evidence or substitute its judgment for that of the jury.  King v. State, 29 S.W.3d 556,
562 (Tex. Crim. App. 2000).  The jury is
the exclusive judge of (1) the facts; (2) the credibility of the witnesses; and
(3) the weight to be given to the testimony of each witness.  Penagraph v. State, 623 S.W.2d
341, 343 (Tex. Crim. App. 1981).  As
factfinder, a jury may reject any, all, or part of a witness’s testimony.  See id.

            In conducting a factual sufficiency review, an appellate
court must review all of the evidence but not in the light most favorable to
the prosecution.  Johnson v. State,
23 S.W.3d 1, 7-8 (Tex. Crim. App. 2000). 
We must determine whether a neutral review of all the evidence, both for
and against the challenged finding, demonstrates that a rational jury could
have found guilt beyond a reasonable doubt. 
Zuniga v. State, 144 S.W.3d 477, 484 (Tex. Crim. App.
2004).  Evidence is factually
insufficient when evidence supporting the verdict, considered by itself, is too
weak to support the finding of guilt beyond a reasonable doubt.  Id.  Evidence is also factually insufficient when
contrary evidence is so strong that the beyond a reasonable doubt burden of
proof could not have been met.  Id.
at 484-85.  Our evaluation should not
intrude upon the factfinder’s role as the sole judge of the weight and
credibility given to any witness’s testimony. 
Cain v. State, 958 S.W.2d 404, 407 & n.5 (Tex. Crim.
App. 1997).

Applicable Law








            A person commits an offense if, with
the intent to establish, maintain, or participate in a combination or in the
profits of a combination or as a member of a criminal street gang, he commits
or conspires to commit one or more enumerated offenses, one of which is
aggravated assault.  Tex. Pen. Code Ann. § 71.02(a)(1)
(Vernon 2003).  “Combination” means three
or more persons  who collaborate in
carrying on criminal activities.  Id.
§ 71.01(a).  “Criminal street gang” means
three or more persons having a common identifying sign or symbol or an
identifiable leadership who continuously or regularly associate in the
commission of criminal activities. Id. §71.01(d). “Conspires to
commit” means that a person agrees with one or more persons that they  or one or more of them engage in conduct that
would constitute the offense and that person or one or more of them perform an
overt act in pursuance of the agreement. 
Id. § 71.01(b).

            The two count indictment against
Appellant specifically alleged aggravated assaults against Dominga and
Hernandez.  First, there must be an
assault.  An assault occurs when one
intentionally, knowingly, or recklessly causes bodily injury to another.  Tex.
Pen. Code Ann. §22.01(a)(1) (Vernon 2003).  An assault becomes aggravated upon proof of
either one of two contingencies.  An
assault is aggravated if the person causes serious bodily injury to
another.  Id. §
22.02(a)(1).  “Serious bodily injury” is
bodily injury that creates a substantial risk of death or that causes death,
serious permanent disfigurement, or protracted loss or impairment of the
function of any bodily member or organ.  Id.
§ 1.07(a)(46).  Alternatively, an assault
is aggravated if the person uses or exhibits a deadly weapon during the
commission of the assault.  Id.
§ 22.01(a)(2). A firearm is a deadly weapon. Id. §1.07(a)(17)(A).


Analysis

            Dominga and James E. Redfield, Jr.,
a medical doctor, testified regarding the life threatening injuries Dominga
received on December 17.  Hernandez
testified that he suffered continued impairment to his foot.  Thomas’s testimony established that Appellant
carried two firearms, a .45 semi-automatic and a .380 semi-automatic, up the
hill where the shooting occurred.  The
evidence showed that both weapons had been fired.  Also, six spent casings from the .45 were
found on top of the hill.  The .380 was
fired before being abandoned.  Further,
both the .45 and the .380 were found abandoned on top of each other on top of
the hill.  The blue gloves given to
Appellant to wear during the shooting were found at the scene of the alleged
offense.  Thomas testified that
Appellant, Coulston, and “Chino” left his vehicle before the shooting.  Mobley testified that he saw what he believed
to be three men, two of whom he identified as Hispanic males, running toward
Thomas’s gold Ford Aerostar van after the shooting. 

            Paul testified that he identified
and chased Appellant as he was running away from the shooting.  The mere presence of an accused at the scene
of an offense is not alone sufficient to support a conviction; however, it is a
circumstance tending to prove guilt which, combined with other facts, may
suffice to show that the accused was a participant.  Valdez v. State, 623 S.W.2d
317, 321 (Tex. Crim. App. 1979).  While
flight alone will not support a guilty verdict, evidence of flight from a crime
scene is a circumstance from which an inference of guilt may be drawn.  Id.  Viewing the evidence in the light most
favorable to the jury’s verdict, we conclude that a rational trier of fact
could have found beyond a reasonable doubt that Appellant had participated as a
member of a street gang in the aggravated assault at 115 East Smith
Street.  

            Having determined that the evidence
is legally sufficient, we address factual sufficiency.  In addition to the evidence summarized above,
the record contained testimony by Zarate that Paul was in the house immediately
after the shooting and, therefore, he could not have chased and identified
Appellant.  Although this evidence is
favorable to Appellant, the jury accepted the other overwhelming evidence of
Appellant’s participation in the shooting. 
The jury is free to believe or disbelieve any witness.  Tidmore v. State, 976 S.W.2d
724, 730 (Tex. App.– Tyler 1998, pet. ref’d). The jury may resolve conflicts in
the evidence, accept one version of the facts, disbelieve a party’s evidence,
and resolve any inconsistencies in favor of either party.  Id.

            We have conducted a neutral review
of all of the evidence, both for and against the finding, giving proper
deference to the jury’s role as the sole judge of the weight and credibility of
witness testimony.  See Santellan
v. State, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997).  The record does not reveal that the proof of
Appellant’s guilt was too weak to support the jury’s finding beyond a
reasonable doubt.  Nor does the record
reveal contrary evidence so strong that guilt could not have been proven beyond
a reasonable doubt.  Thus, we hold the evidence
is factually sufficient to support the jury’s finding.  Appellant’s first issue is overruled.

 

Improper Comment on the Evidence








            In his second issue, Appellant contends
that the trial court made an improper comment on the evidence when it read a
portion of the transcript to the jury that the jury had requested.  Appellant included no citations to any
authorities or to the record in making this argument.  The Texas Rules of Appellate Procedure state
that an appellant’s brief must state concisely all issues or points presented
for review and contain a clear and concise argument for the contentions made,
with appropriate citations to authorities and to the record.  Tex.
R. App. P. 38.1(e), (h).  The
failure to brief, or adequately brief, an issue by an appellant effects a
waiver of that issue on appeal.  See Swearingen
v. State, 101 S.W.3d 89, 100 (Tex. Crim. App. 2003).  Appellant’s brief does not contain a clear
and concise argument on this issue and does not cite to any authorities or to
the record.  Accordingly, we hold that
Appellant has waived any alleged error on appeal.  See Tex.
R. App. P. 38.1(e), (h). 
Appellant’s second issue is overruled.

 

Conclusion 

            The judgment of the trial court is affirmed.

 

 

                                                                                         JAMES T. WORTHEN  

                                                                                                     Chief Justice

 

 

Opinion delivered February 28, 2006.

Panel
consisted of Worthen, C.J., Griffith, J., and DeVasto, J.

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

(DO NOT PUBLISH)











[1] Killingsworth
testified that “Chino” was a moniker used by five of the thirty-six Latin Kings
in Nacogdoches on December 17, 2002.  At
trial he stated that the police department was unable to identify which  “Chino” was involved in this offense.  





[2] A muzzle blast is the fire seen coming
from the end of a firearm.





[3]
This weapon was found by a citizen
who had been looking for debris from the space shuttle explosion of February 1,
2003. 





[4] Paul was sixteen on December 17, 2002.