In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00137-CR


______________________________




JESSIE RUIZ, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the Criminal District Court #4


Dallas County, Texas


Trial Court No. F07-23595-K




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 Jessie Ruiz appeals from his conviction in Dallas County (1) of possession of marihuana in an
amount between four ounces and five pounds. After pleading guilty, the jury assessed his
punishment at two years' imprisonment in a state jail facility. Ruiz presently has five other
convictions currently on appeal before this Court. (2)

 On appeal, Ruiz contends that his appointed counsel's failure to object when the State
explained parole law, mentioned plea bargaining, and allegedly interjected new evidence during
closing arguments in the punishment phase amounted to ineffective assistance of counsel.

 We addressed this issue in detail in our opinion of this date on Ruiz's appeal in cause number
06-08-00136-CR. For the reasons stated therein, we likewise conclude that ineffective assistance
of counsel has not been shown.

 We affirm the judgment. 



 Jack Carter

 Justice


Date Submitted: January 5, 2009

Date Decided: January 8, 2009


Do Not Publish



1. The conviction having been in Dallas County, this case was originally appealed to the Fifth
Court of Appeals and was then transferred to this Court by the Texas Supreme Court pursuant to its
docket equalization efforts. See Tex. Gov't Code Ann. § 73.001 (Vernon 2005). We are unaware
of any conflict between precedent of the Fifth Court of Appeals and that of this Court on any relevant
issue. See Tex. R. App. P. 41.3.
2. Ruiz appeals from six convictions. In cause number 06-08-00136-CR, he appeals a
conviction for possession of methamphetamine in an amount between four and 200 grams, with
intent to deliver, for which he received twenty years' and four months' imprisonment. In cause
numbers 06-08-00138-CR and 06-08-00139-CR, he appeals convictions of possession of less than
one gram of cocaine and evading arrest, respectively. In these two cases, Ruiz was sentenced to two
years' imprisonment in a state jail facility, to run concurrently. Ruiz also appeals his conviction in
cause number 06-08-00140-CR of possession of methamphetamine in an amount between one and
four grams. Ruiz was sentenced in this case to five years' imprisonment, to run concurrently. 
Finally, in cause number 06-08-00141-CR, Ruiz was convicted of attempting to take a weapon from
a police officer, for which he received two years' imprisonment in a state jail facility, to run
concurrently, and was assessed a $2,000.00 fine. 


 529 (Tex. Crim. App. 1990),
evidence regarding details of the surgery may support an inference regarding the character of the
injury as inflicted. Fleming v. State, 987 S.W.2d 912, 917 (Tex. App.-Beaumont 1999), pet. dism'd,
21 S.W.3d 275 (Tex. Crim. App. 2000) (a metal plate attached to victim's pelvis with six screws
supported inference that at the time of injury, both the leg and the pelvis would have been unable to
support victim's weight). To be considered "protracted," the loss or impairment should be
continuing, drawn out, extended, lengthy, lingering, never-ending, or ongoing. See Moore v. State,
739 S.W.2d 347, 352 (Tex. Crim. App. 1987). A period of recuperation does not elevate a bodily
injury to a serious bodily injury. Hernandez v. State, 946 S.W.2d 912 (Tex. App.-El Paso 1997, pet.
ref'd) (injury requiring surgery and doctor's orders not to work for six weeks). 

 When an injury has received immediate medical treatment eliminating possible disfigurement
or impairment, whether or not the injury constituted serious bodily injury as inflicted may have to
be proven by circumstantial evidence from which the jury is allowed to make reasonable inferences. 
While expert testimony as to the extent and effects of the injuries regarding their disfiguring or
impairing quality has been found sufficient, such testimony is not necessary where the injuries and
their effects are obvious. See Carter v. State, 678 S.W.2d 155 (Tex. App.-Beaumont 1984, no pet.)
(victim's testimony that bullet entered mouth, passed through tongue, and went into top of mouth was
sufficient without need for expert testimony); see also Hart v. State, 581 S.W.2d 675 (Tex. Crim.
App. [Panel Op.] 1979) (evidence that the stab wound to the stomach required twenty stitches was
sufficient). The jury may use common sense and apply common knowledge, observation, and
experience gained in the ordinary affairs of life when giving effect to the inferences that may
reasonably be drawn from the evidence. Tidmore v. State, 976 S.W.2d 724, 730 (Tex. App.-Tyler
1998, pet. ref'd). If conflicting inferences exist, we must presume the trier of fact resolved any
conflict in favor of the prosecution. Id. 

 The paramedic who arrived at the scene of the accident described Ragsdale's left ankle and
leg as swollen and rotated or twisted outward. The physician confirmed that Ragsdale's left ankle
bone was fractured as well as her left arm, but that the bones were still properly aligned. Ragsdale
testified about an injury to her hipbone that was making it difficult to sit or stand for long periods
of time, but the physician did not treat Ragsdale for a hip injury. Her medical records state that no
acute fracture was shown in the hip joints.

 Ragsdale's big toe on her right foot was dislocated during the accident. She described it as
pulled out of the socket and straight up in the air. She could not walk on that foot prior to medical
treatment. The paramedic described the toe as deformed, out of place, and at a deformed angle. The
initial treating physician determined that the toe was dislocated. She testified that the toe had been
completely knocked off of the foot-bone, although it was an internal injury. She described it as
similar to an injury you would get playing basketball, but also that it was significant and very painful
when asked if it were just a jammed toe or a serious injury. After consulting with an orthopedic
surgeon, the physician splinted the toe and transferred Ragsdale to the hospital because the surgeon
thought he might have to relocate the toe surgically.

 Ragsdale stayed in the hospital for three days, during which time the injuries were repaired.
The ankle and arm were placed in casts, but there was no description of the procedure required to
reposition the toe. Although Ragsdale testified that she was unable to use her arm, ankle, or foot for
a period of time after the accident, the physician testified that Ragsdale had regained function of the
toe by the time she visited the physician again in February. The physician testified that she did not
know of any protracted problems Ragsdale experienced from the injuries and that she had no
knowledge of any permanent disfigurement. She also testified that it was possible Ragsdale could
have further complications with the toe in the form of pain and arthritis despite the medical
treatment. 

 Viewing the evidence in the light most favorable to the prosecution, the toe injury and its
immediate effects were obvious based on the evidence presented. Both Ragsdale and the paramedic
described the appearance of the toe injury. Ragsdale testified that she could not walk on that foot
prior to treatment. The treating physician confirmed that the toe was dislocated and completely
removed from the foot-bone. A conclusion regarding the long-term effects of the injury as inflicted
would have been based on the circumstantial evidence provided, including the immediate effects of
the injury, the physician's testimony that the injury was significant, that she called a surgeon to ask
about appropriate treatment, and that the surgeon believed surgery would be required to reposition
the toe. The combined and cumulative force of all of the evidence warranted the inference that such
disfigurement or impairment would have been permanent or prolonged or that it would not have been
permanent or prolonged. These inferences would have been reasonable and based on more than a
modicum of evidence. When competing inferences are possible, it is assumed that the jurors
resolved the inference in favor of the verdict. See Tidmore, 976 S.W.2d at 730. Therefore, the
evidence was legally sufficient to support a finding of serious bodily injury. 

 In viewing all of the evidence, the verdict is not so contrary to the overwhelming weight of
the evidence as to be clearly wrong and unjust. The physician's comment that the wound was the
kind you could get playing basketball provides little information as to the severity of the injury,
because both minor and severe injuries may result from playing such a sport. Additionally, the
physician's testimony that she did not know of any protracted problems or permanent disfigurement
Ragsdale experienced from the injuries when Ragsdale visited her a month after the accident pertains
to the state of the injuries after medical treatment had been rendered. Whether an injury constitutes
a serious bodily injury is determined as the injury was inflicted, not taking into account the
ameliorative effects of medical treatment. See Brown, 605 S.W.2d at 572. Therefore, the evidence
was factually sufficient to support the finding of serious bodily injury. 

 Because the evidence regarding the toe injury was sufficient to support the finding of serious
bodily injury, the evidentiary sufficiency of the other injuries involved need not be discussed. 

 Taylor's single point of error is overruled, and the judgment of the trial court is affirmed.




 Ben Z. Grant

 Justice


Date Submitted: November 8, 2001

Date Decided: February 6, 2002


Publish