

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-14-00737-CR

Susan **WILCUT**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 2, Bexar County, Texas
Trial Court No. 398965
Honorable Jason Wolff, Judge Presiding

Opinion by:    Sandee Bryan Marion, Chief Justice

Sitting:    Sandee Bryan Marion, Chief Justice
Rebeca C. Martinez, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed:  May 6, 2015

AFFIRMED

Susan Wilcut was convicted by a jury of assault–bodily injury.  On appeal, she contends

the evidence is legally insufficient to support the jury's implicit rejection of her defensive theories

and an error in the jury charge caused her egregious harm.  We affirm the trial court's judgment.

### BACKGROUND

The complainant, Laurie Cherry, testified her father conveyed a tract of land to her and her

sister, Lisa Griesenbeck.  The land was previously owned by their grandfather, who inherited the

land from his father.  When their grandfather died in 2009, his wife was residing on the property,

and they took no action with regard to the property until their grandfather's wife died in January of 2012. At the time their grandfather's wife died, her son, James Carlton, was residing in a mobile home located on the land; however, he voluntarily moved from the mobile home after his mother's death.

On July 23, 2012, Laurie and Lisa's father sent Carlton a letter, advising him he had three days to remove the mobile home from the land or he would forfeit all of his rights to it. Laurie and Lisa's mother and Lisa delivered the letter. At that time, Carlton informed them he could not afford to move the mobile home, and he did not want it. Laurie testified Carlton stated he was not coming back to get the mobile home or anything else. Lisa testified they thought Carlton was "finished at the property" based on his statements.

On July 26, 2012, Laurie, Lisa, and Laurie's husband Troy went to the mobile home to clean and place the items in the mobile home in bags to put by the road where Carlton could access them. Laurie explained that "under the eviction process we were, I guess, responsible for bagging up their stuff to put it where it would be available for them to get." Laurie acknowledged they did not go through a formal eviction process, but they had "read the Texas laws that said that we had to make their stuff available to them."

Laurie and Lisa testified Carlton had moved from the mobile home four to five months before they went to bag the remaining items. No locks were on the doors to the mobile home, and the doors were bent so they would not completely close. Trash and items were strewn throughout the home. In addition, piles of dog feces, rats, and roaches were present.

Sometime after they arrived at the mobile home, Wilcut, who is Carlton's step-daughter, arrived.[1] Laurie and Lisa testified Wilcut was repeatedly yelling she had a gun and would kill

---

[1] Laurie testified Wilcut arrived an hour and a half after they arrived, while Lisa testified Wilcut arrived twenty to thirty minutes after they arrived.

them. Troy immediately called 911 on his cell phone. Wilcut then entered the mobile home and began pushing and bumping them before grabbing and swinging a three-foot tree limb that was in the mobile home in an effort to hit them. Troy grabbed the tree limb from Wilcut, and Laurie pulled Wilcut to the floor. As Laurie was pulling Wilcut down, Wilcut grabbed a heavy drinking glass and hit Laurie in the forehead with it. Laurie testified the laceration required eight stiches, and photographs of her injury were introduced into evidence. Although Troy had a concealed handgun license and a handgun was tucked into his waistband, Laurie, Lisa, and Troy all testified he never pulled out the gun. Laurie and Lisa held Wilcut down until a deputy sheriff arrived.

Wilcut testified she received a phone call that someone was in her step-father's mobile home. Wilcut testified she called 911 and was driven to the mobile home by her uncle and another man who left the scene during the altercation. Wilcut was surprised the authorities had not arrived before she did. Wilcut stated she was being nice when she first arrived but became angry when Laurie, Lisa, and Troy refused to exit the mobile home. Wilcut wanted them to wait outside until the police arrived. Wilcut stated she and Carlton had moved from the mobile home four to five months before the altercation but were slowly moving their belongings from the home. Wilcut denied picking up a stick or a tree limb. Instead, she testified Troy pulled out his gun as Laurie and Lisa threw her down. Wilcut further testified Laurie and Lisa were sitting on top of her and she was unable to breathe. When Laurie moved slightly, Wilcut was able to free an arm and grabbed the glass and hit Laurie. Carlton testified he never gave anyone permission to enter his mobile home and denied saying he did not want the mobile home and was abandoning the remainder of his property.

Deputy Gabriel Magallanes was the first officer to arrive at the scene. His report noted the different versions of the events relayed by the parties. He arrested Wilcut at the scene because she admitted to striking Laurie with a glass.

The jury charge contained instructions on the defensive theories of self-defense, defense of property, and defense of property of a third person. The jury implicitly rejected the defensive theories and found Wilcut guilty of assault-bodily injury. Wilcut appeals.

## SUFFICIENCY OF THE EVIDENCE

In her second, third, and fourth issues, Wilcut contends the evidence is legally insufficient to support the jury's implicit rejection of her defensive theories.

A. Self-Defense, Defense of Property, and Defense of Property of a Third Person

Section 9.31(a) of the Texas Penal Code defines the defensive theory of self-defense. TEX. PENAL CODE ANN. § 9.31(a) (West 2011). Under section 9.31(a), "a person is justified in using force against another when and to the degree the actor reasonably believes force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." *Id.* The use of force against another is not justified if the actor provoked the other's use of unlawful force unless the actor abandons the encounter. *Id.* at § 9.31(b)(4).

Section 9.41(a) of the Code defines the defensive theory of defense of one's own property. *Id.* at § 9.41(a). Under section 9.41(a), "a person in lawful possession of land or tangible, movable property is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to prevent or terminate the other's trespass on the land or unlawful interference with the property." *Id.*

Section 9.43 of the Code defines the defensive theory of defense of a third person's property. *Id.* at § 9.43. Under section 9.43, a person is justified in using force against another to protect land or tangible, movable property of a third person if: (1) the actor would be justified in using force to protect his own land or property under section 9.41; and (2) the actor reasonably believes: (1) the unlawful interference constitutes attempted or consummated theft of or criminal

mischief to the tangible, movable personal property; or (2) the third person whose land or property he uses force to protect is the actor's parent. *Id*

B.      Burden of Proof

A defendant bears the initial burden of production with regard to a defensive theory. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003). This requires the defendant to produce some evidence that supports the particular defense. *Zuliani*, 97 S.W.3d at 594. Once the defendant meets this burden by producing some evidence, the State then bears the burden of persuasion to disprove the raised defense. *Zuliani*, 97 S.W.3d at 594; *Saxton v. State*, 804 S.W.2d 910, 913 (Tex. Crim. App. 2001). The burden of persuasion is not one that requires the production of evidence, so the State is not required to affirmatively produce evidence refuting the defensive claim. *Saxton*, 804 S.W.2d at 913. Instead, the State is required only to prove its case beyond a reasonable doubt. *Zuliani*, 97 S.W.3d at 594; *Saxton*, 804 S.W.2d at 913. When the defendant is found guilty, there is an implicit finding against the defensive theory. *Zuliani*, 97 S.W.3d at 594; *Saxton*, 804 S.W.2d at 914.

C.      Legal Sufficiency Standard of Review

In evaluating the legal sufficiency of the evidence, "we consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). "Viewing the evidence 'in the light most favorable to the verdict' under a legal-sufficiency standard means that the reviewing court is required to defer to the jury's credibility and weight determinations because the jury is the **sole** judge of the witnesses' credibility and the weight to be given their testimony." *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (emphasis in original). The jury

can choose to believe all, some or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.3d 459, 461 (Tex. Crim. App. 1991).

    D.    Analysis

In view of the testimony presented, the jury could have chosen to believe Wilcut provoked the use of force against her by entering the mobile home, bumping and pushing Laurie, Lisa, and Troy, and attempting to hit them with a three-foot tree limb. Although Wilcut denied taking these actions, the jury is the sole judge of the credibility of the witnesses. *See Brooks*, 323 S.W.3d at 899. Because the jury could have found Wilcut provoked the use of force against her, the jury could have rejected her self-defense theory on that basis. *See* TEX. PENAL CODE. § 9.31(a)(4).

In addition, Wilcut testified she struck Laurie with the glass because she was unable to breathe. Wilcut did not testify she struck Laurie with the glass to "prevent or terminate [her and] the other's trespass on the land or the unlawful interference with the property." TEX. PENAL CODE ANN. § 9.41(a); *see also Tidmore v. State*, 976 S.W.2d 724, 731 (Tex. App.—Tyler 1998, pet. ref'd) (holding trial court did not err in failing to instruct jury regarding defense of property when evidence established appellant discharged gun in rage or to protect himself). Also, the jury could have determined the use of force to protect any property was not "immediately necessary" in view of Wilcut's testimony that she had phoned 911 and believed law enforcement should have arrived before she did. Accordingly, the jury could have implicitly rejected Wilcut's defensive theories of defense of property and defense of third person's property.

Wilcut's second, third, and fourth issues are overruled.

## JURY CHARGE

In her first issue, Wilcut asserts the jury charge included an erroneous instruction with regard to defense of a third person's property, and the error resulted in egregious harm. The portion

of the jury charge about which Wilcut complains is the following instruction on defense of a third

person's property:

> A person is justified in using force or deadly force against another to protect land or tangible, moveable property of a third person if, under the circumstances as she reasonably believes them to be, the actor would be justified in using force or deadly force to protect her own land or property and the actor reasonably believes the unlawful interference constitutes attempted or consummated theft of or criminal mischief to the tangible, moveable property, **and** a third person whose land or property she uses force or deadly force to protect is the actor's spouse, parent, or child, resides with the actor, or is under the actor's care.

(emphasis added). As previously noted, under section 9.43 of the Code, a person is justified in

using force against another to protect land or tangible, movable property of a third person if: (1)

the actor would be justified in using force to protect his own land under section 9.41(a); and (2)

the actor reasonably believes: (1) the unlawful interference constitutes attempted or consummated

theft of or criminal mischief to the tangible, movable personal property; **or** (2) the third person

whose land or property he uses force to protect is the actor's parent. *See* TEX. PENAL CODE.

§ 9.43. In its brief, the State concedes that the use of the conjunctive term "and" in the jury charge

was erroneous.

Because Wilcut did not object to the instruction, she is not entitled to a reversal unless the

record shows she suffered "egregious harm." *Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim.

App. 2013). "This is a difficult standard to meet and requires a showing that [Wilcut was] deprived

of a fair and impartial trial." *Id.* "The record must disclose 'actual rather than theoretical harm,'

and the error must have affected the very basis of the case, deprived the defendant of a valuable

right, or vitally affected a defensive theory." *Id.* (quoting *Cosio v. State*, 353 S.W.3d 766, 777

(Tex. Crim. App. 2011)). "In determining whether egregious harm is shown, we look at the entire

jury charge, the state of the evidence (including the contested issues and the weight of probative

- 7 -

evidence), the arguments of counsel, and any other relevant information revealed by the record of the trial as a whole." *Id*.

As previously noted, the jury could have found from Wilcut's testimony that she was not acting in defense of property when she struck Laurie, but was only acting to defend herself. *See Tidmore*, 976 S.W.2d at 731. Moreover, the jury could have found Wilcut's use of force was not "immediately necessary" given her testimony that she previously contacted law enforcement and only wanted Laurie, Lisa, and Troy to exit the mobile home until law enforcement arrived. During closing argument, the prosecutor emphasized this testimony, asserting, "Why — if you called the police, if you were really worried that someone was trespassing and destroying your father's property, why didn't you stay out by your truck and wait for law enforcement to arrive?" Although Wilcut notes the words "constitutes attempted or consummated theft of or criminal mischief to the tangible" were underlined in the jury charge by a pen or pencil, any theory or conclusion about the reason or by whom those words were underlined would be pure speculation. Having reviewed the record as a whole, we conclude the record does not establish actual as opposed to theoretical harm or show that Wilcut was deprived of a fair and impartial trial.

## CONCLUSION

The trial court's judgment is affirmed.

Sandee Bryan Marion, Chief Justice

DO NOT PUBLISH