NO












 
 
 
 
 
 
  
 
 
 
 
  
 


NO. 12-08-00390-CR

 

                         IN
THE COURT OF APPEALS

 

            TWELFTH
COURT OF APPEALS DISTRICT

 

                                      TYLER, TEXAS

 

GILBERTO PEREZ, JR.,                                 §     APPEAL
FROM THE 159TH

APPELLANT

 

V.                                                                         §     JUDICIAL
DISTRICT COURT OF

 

THE STATE OF TEXAS,                                  

APPELLEE                                                        §     ANGELINA
COUNTY, TEXAS

 





MEMORANDUM
OPINION

            Gilberto
Perez, Jr. appeals his conviction for murder.  He raises three issues on
appeal.  We affirm.

 

Background

On
August 12, 2007, Wesley Tyrone Hawthorne, the victim, was at his sister’s home
attending a barbeque cookout.  Several hours later, Hawthorne left the barbeque
in his sister’s Ford Mustang to take his friend Kelvin Lewis a plate of food. 
In the interim, Hawthorne received a call from Appellant, asking Hawthorne to
pick him up so that they could visit and drink a bottle of Appellant’s gin.[1] 
After Hawthorne picked up Appellant, the pair went to Lewis’s home around
midnight,[2] where they consumed the food
and alcohol they had brought along with them.  They left Lewis’s home at around
1:30 to 2:00 a.m. in a good humor.  Hawthorne telephoned his sister at 2:00 to
2:30 a.m. and told her that he was fine, was having a good time, and would call
her when he returned home. 

Appellant
gave differing versions of what happened next.  He recounted to police officers
on the scene that while driving Appellant home, Hawthorne became angry, was
“talking shit,” and struck Appellant, requiring Appellant to react in
self-defense.  At trial, Appellant testified that he was asleep in the Mustang
and awoke to Hawthorne repeatedly hitting him in the face with his elbow.  He
stated that at the time, he did not realize who was hitting him because he was
“blacked out” and “halfway dazed.”  Appellant stated further that he initially
thought both of them had been jumped by unknown third parties, but later
recalled striking Hawthorne in an attempt to defend himself. 

            At
the time of the fight, the Mustang was stopped in front of the home of Luis
Perez, Appellant’s uncle.  After hitting Hawthorne, Appellant ran to Luis’s
home and knocked on the window, awakening him.  Appellant and Luis moved the
Mustang out of the road.  When Appellant asked Luis to help him transport
Hawthorne to the Mustang to “sleep it off,” Luis replied that he would not. 
Luis then proceeded to call 911.  In response, Appellant became angry and struck
Luis.  Luis and Appellant’s brother Hector, who lived with Luis at the time,
struggled to subdue Appellant until the police and paramedics arrived.   Upon
their arrival, the paramedics found Hawthorne dead.

Appellant
was arrested and indicted for murder.  At trial, the jury convicted Appellant
of the offense as charged in the indictment.  Appellant was sentenced to
fifteen years of imprisonment.  

 

Legal and Factual Sufficiency of the Evidence

            In
his first two issues, Appellant challenges the legal and factual sufficiency of
the evidence to support his conviction.

Standard
of Review

The
court of criminal appeals has recently held that there is “no meaningful
distinction between the Jackson v. Virginia[3]
legal sufficiency standard and the Clewis factual sufficiency
standard and that “the Jackson v. Virginia standard is the only
standard that a reviewing court should apply in determining whether the
evidence is sufficient to support each element of a criminal offense that the
State is required to prove beyond a reasonable doubt.”  See Brooks v.
State, No. PD-0210-09, 2010 WL 3894613, at *1 (Tex. Crim. App. Oct. 6,
2010).  Consequently, the court of criminal appeals overruled the factual
sufficiency standard of review as set forth in Clewis v. State[4] and its progeny.  See id.
 Therefore, we will not review Appellant’s challenge to the factual
sufficiency of the evidence.

In
reviewing the legal sufficiency of the evidence to support a conviction, we
view all of the evidence in the light most favorable to the prosecution in
order to determine whether any rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560
(1979); LaCour v. State, 8 S.W.3d 670, 671 (Tex. Crim. App.
2000).  The jury is the sole judge of the credibility of witnesses and of the
weight to be given their testimony.  Barnes v. State, 876 S.W.2d
316, 321 (Tex. Crim. App. 1994).  Any reconciliation of conflicts and contradictions
in the evidence is entirely within the jury’s domain.  Losada v. State,
721 S.W.2d 305, 309 (Tex. Crim. App. 1986).  Likewise, it is the responsibility
of the jury to weigh the evidence and draw reasonable inferences from basic
facts to ultimate facts.  Jackson, 443 U.S. at 319, 99 S. Ct. at
2789.

We
measure the sufficiency of the evidence by the elements of the offenses as
defined by a hypothetically correct jury charge.  Villarreal v. State,
286 S.W.3d 321, 327 (Tex. Crim. App. 2009); Malik v. State, 953
S.W.2d 234, 240 (Tex. Crim. App. 1997).  “‘Such a charge [is] one that
accurately sets out the law, is authorized by the indictment, does not
unnecessarily increase the State’s burden of proof, or unnecessarily restrict
the State’s theories of liability, and adequately describes the particular
offense for which the defendant was tried.’” Id. (quoting Malik,
953 S.W.2d at 240).

Applicable
Law

A
person commits murder if he intentionally or knowingly causes the death of
another person or intends to cause serious bodily injury and commits an act
clearly dangerous to human life that causes the death of another.  Tex. Penal Code Ann. § 19.02(b)(1),
(2) (Vernon 2003).  A person acts intentionally with respect to the nature of
his conduct or to a result of his conduct when it is his conscious objective or
desire to engage in the conduct or cause the result.  Id. §
6.03(a) (Vernon 2003).  A person acts knowingly with respect to the nature of
his conduct or to circumstances surrounding his conduct when he is aware of the
nature of his conduct or that the circumstances exist.  Id. §
6.03(b).  A person also acts knowingly if he is aware that his conduct is
reasonably certain to cause the result.  Id.

Direct
evidence of the elements of the offense is not required.  Hooper v. State,
214 S.W.3d 9, 14 (Tex. Crim. App. 2007).  Juries are permitted to make
reasonable inferences from the evidence presented at trial, and circumstantial
evidence is as probative as direct evidence in establishing the guilt of an
actor.  Id. at 14-15.  Circumstantial evidence alone can be
sufficient to establish guilt.  Id. at 15.  Proof of a culpable
mental state almost invariably depends upon circumstantial evidence.  See Montgomery
v. State, 198 S.W.3d 67, 87 (Tex. App.–Fort Worth 2006, pet. ref’d); Lee
v. State, 21 S.W.3d 532, 539 (Tex. App.–Tyler 2000, pet. ref’d).  Intent
can be inferred from the extent of the injuries to the victim, the method used
to produce the injuries, and the relative size and strength of the parties.  Patrick
v. State, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995).  In a murder
case, evidence of a particularly brutal or ferocious mechanism of death,
inflicted upon a helpless victim, can be controlling on the issue of intent or
knowledge.  Id.  Additionally, a culpable mental state can be
inferred from the acts, words, and conduct of the accused.  Id.

Discussion

Appellant
contends that the evidence is insufficient to show he intentionally or
knowingly caused Hawthorne’s death and that there was no evidence that he
intended to cause serious bodily injury by acts clearly dangerous to human
life.

            Kelvin
Lewis testified that Appellant and Hawthorne had no arguments while they were visiting
him.  Lewis also stated that neither Appellant nor Hawthorne appeared injured
or had blood on him when they left his home.  Luis Perez testified that he
awoke to Appellant’s tapping at his window, and noticed that he was covered in
blood.  Appellant told his uncle that he had been in a fight with Hawthorne and
that Hawthorne was lying on the road because Appellant had “knocked him out.”  Luis
testified that he believed Hawthorne was still alive, but that he looked
severely injured.  Appellant then dragged Hawthorne by his legs from the road
into the grassy area in front of Luis’s home.  Appellant’s uncle saw Appellant
slap Hawthorne in the face and say “get up nigger,” “I told you not to mess
with me,” and “I told you to respect me.” Appellant wanted Luis to help him
place Hawthorne in his vehicle, but Luis refused.  Appellant asked to go inside
to wash off the blood on his body, and Luis also refused that request.  Luis called
the police and told them what had transpired.  Appellant became enraged, saying
that “if I’m going to jail for beating one nigger’s ass, I’m going to go to
jail for two,” and then struck his uncle in the nose.  Luis and Appellant’s brother
Hector then fought with Appellant and subdued him until police arrived.  Lufkin
police officers first took control of the volatile situation before tending to
Hawthorne.  By this time, several minutes had elapsed.  The responding
paramedics were not able to assess Hawthorne until approximately twenty minutes
after the incident took place.  A paramedic testified that Hawthorne had no
vital signs upon his arrival, and because of the length of time that elapsed, no
measures were taken in an attempt to revive him.  A forensic pathologist
performed an autopsy on Hawthorne, and concluded that blunt force trauma caused
aspiration of blood into Hawthorne’s lungs, resulting in his death.

An
examination of Hawthorne revealed that several of his teeth had been knocked
out.  The swelling on Hawthorne’s face was so severe that he appeared
unrecognizable.  There was significant blood spatter in and on the Mustang.  Moreover,
there were significant pools of blood in the road where Luis first saw him and
in the grass where police found him.  Appellant’s knuckles were bruised,
swollen, and cut.  Appellant claimed that Hawthorne struck him, but the
paramedics and police officers found no evidence of injury to Appellant.  Likewise,
Appellant offered into evidence the medical records relating to his treatment
at the emergency room, but the records do not show that he sustained any injury
other than to his hands.  

In
his interview with police, Appellant indicated that he was too strong for
Hawthorne, and that he acquired that strength from shoveling asphalt.  He
claimed that he had boxing prowess and that the force of his blows was great.  On
the videotape, Appellant stated he punched Hawthorne once or twice, then later
two or three times, and as many as four times.  Appellant gave several
different versions of what led to the fight, and conflicting accounts of what
actually happened during the fight.  At trial, he admitted providing false
accounts of what happened.  His explanation was that the police misled him into
believing that Hawthorne survived the skirmish, and he did not want Hawthorne
to get into trouble for fighting.  However, the record shows that on several
occasions, police told Appellant that Hawthorne died as a result of his
injuries.  

Questions
regarding the weight and credibility of witness testimony are for the jury.  See
Santellan, 939 S.W.2d at 164.  When there is conflicting evidence,
the jury’s resolution of the conflicts is generally regarded as conclusive.  Van
Zandt v. State, 932 S.W.2d 88, 96 (Tex. App.–El Paso 1996, writ ref’d).
 Here, the jury resolved the conflicts in favor of the State, which it was
authorized to do.  Cain v. State, 958 S.W.2d 404, 409-10 (Tex.
Crim. App. 1997).  Likewise, given the severity of Hawthorne’s injuries,
coupled with Appellant’s statements that his uncle overheard and admissions to
the police, the jury could have inferred that Appellant intended to cause
serious bodily injury, that his repeated punching of Hawthorne was an act
clearly dangerous to human life, and that Appellant’s actions caused
Hawthorne’s death.  Viewing the evidence in the light most favorable to the
verdict, we conclude that the evidence is legally sufficient to support the
verdict. 

Appellant’s
first and second issues are overruled.

 

Jury Charge

            In
his third issue, Appellant raises challenges to the trial court’s jury charge. 
Specifically, in three subissues, he contends that the court’s charge failed to
require jury unanimity because of the multiple manner and means instruction,
the definition of voluntary intoxication was incorrect, and the trial court
should have inserted a deadly force self-defense instruction.

Standard
of Review

Our
review of alleged error in the jury charge involves a two step process.  Sakil
v. State, 287 S.W.3d 23, 25-26 (Tex. Crim. App. 2009).  Initially, we
determine whether error occurred; then, if there was error, we evaluate whether
sufficient harm resulted from the error to require reversal.  Ngo v.
State, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005).  If there was error
and if the appellant objected to the error at trial, “reversal is required if
the error is ‘calculated to injure the rights of [the] defendant,’ ” meaning
that “there must be some harm to the accused from the error.”  Sakil,
287, S.W.3d at 25-26 (quoting Almanza v. State, 686 S.W.2d 157,
171 (Tex. Crim. App. 1985)). 

Unanimity
and Election of Manner and Means

            Appellant
contends that the trial court erred in “denying [Appellant’s] request to require
the State to elect a theory of the manner and means of committing the offense
and thus eliminating the possibility of requiring a unanimous verdict for
either theory so believed by the jury.”

The
indictment alleged that Appellant “intentionally or knowingly cause[d] the
death of an individual, namely Wesley Hawthorne, by striking Wesley Hawthorne
with [Appellant’s] hands or fists. . . .”  See Tex. Penal Code Ann. § 19.02(b)(1) (Vernon 2003).  In the
conjunctive, the indictment read that Appellant, “with intent to cause serious
bodily injury to an individual, namely, Wesley Hawthorne, commit[ted] an act
clearly dangerous to human life that caused the death of said Wesley Hawthorne,
by striking Wesley Hawthorne with [Appellant’s] hands or fists.”  See id.
§ 19.02(b)(2).  The trial court’s charge to the jury included similar language,
but stated the manner and means allegations in the disjunctive.[5] 
Appellant argues that charging the jury in the disjunctive allowed the jury to
find Appellant guilty of murder without a unanimous verdict.

Jury
unanimity is required in all criminal cases.  Ngo v. State, 175
S.W.3d 738, 745 (Tex. Crim. App. 2005).  The jury must agree that the defendant
committed one specific crime.  Landrian v. State, 268 S.W.3d 532,
535 (Tex. Crim. App. 2008).  That does not mean, however, that the jury must
unanimously find that the defendant committed that crime in one specific way or
even with one specific act.  Id.  The unanimity requirement is
not violated when the jury is instructed on alternative theories, or manner and
means, of committing the same offense.  Martinez v. State, 129
S.W.3d 101, 103 (Tex. Crim. App. 2004).  Where alternate theories of committing
the same offense are submitted to the jury in the disjunctive, and the jury is required
by the charge to find each element of the offense beyond a reasonable doubt, it
is appropriate for the jury to return a general verdict if the evidence is
sufficient to support a finding under any of the theories submitted.  Kitchens
v. State, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991).

If
the statute in question establishes different manner and means by which the
offense may be committed, unanimity is generally not required on the alternate
manner and means of the offense's commission.  Jefferson v. State,
189 S.W.3d 305, 312 (Tex. Crim. App. 2006).  In the instant case, Appellant was
charged with murder.  The murder statute specifies alternative methods or means
of committing the same offense.  See Tex.
Penal Code Ann. 19.02(b).

The
charge in this case allowed the jury to convict Appellant of only one offense,
murder, (1) if it found that he intentionally or knowingly caused Hawthorne’s
death by striking him with his hands and fists, or (2) if it found that he
intended to cause Hawthorne serious bodily injury and committed an act clearly
dangerous to human life (i.e. striking Hawthorne with his hands and fists) that
caused Hawthorne’s death.  The charge tracked the manner and means language of
the murder statute.  See Tex.
Penal Code Ann. 19.02(b)(1), (2).  Thus, whether Appellant intentionally
caused Hawthorne’s death or whether he intended only to cause Hawthorne serious
bodily injury and committed an act clearly dangerous to human life that caused
Hawthorne’s death, the jury was authorized find him guilty of a single
offense—murder.  

Appellant
was convicted under a statute and jury charge that did not describe different
offenses but instead set forth different methods of committing the same
offense.  See Yost v. State, 222 S.W.3d 865, 877 (Tex. App.—Houston
[14th Dist.] 2007, pet. ref’d).  Therefore, the trial court did not err in
submitting the alternate means of committing murder disjunctively, and the jury
charge appropriately instructed the jury.

Intoxication
Instruction

During
the trial, Appellant used his intoxication at the time of Hawthorne’s death as
a defense to the murder charge against him.  Specifically, he blamed his
intoxication for the events that occurred, and therefore urged that he could
not have formed the intent to murder Hawthorne.  Appellant submitted a proposed
definition of intoxication taken from the definition of intoxication in chapter
49 of the Texas Penal Code.  See Tex.
Penal Code Ann. § 49.01 (Vernon 2003).  The introductory language to
that section provides that this definition applies only in intoxication and
alcoholic beverage offenses. See id. (“In this chapter[,]
. . . intoxicated means not having the normal use of mental or physical
faculties by reason of the introduction of alcohol . . . into the body; or
[ ] having an alcohol concentration of 0.08 or more.”) (emphasis added). 

            The
trial court denied Appellant’s requested instruction and inserted the
“voluntary intoxication” instruction instead.  See Tex. Penal Code Ann. § 8.04(a) (Vernon
2003).  The instruction following section 8.04(a) is appropriate if there is
evidence that might lead a jury to conclude that the defendant’s intoxication
somehow excused his actions.  See Sakil, 287 S.W.3d at 26 (citing
Taylor v. State, 885 S.W.2d 154, 156 (Tex. Crim. App. 1994)). 
Therefore, the trial court properly denied Appellant’s instruction and charged
the jury by tracking the language in section 8.04(a).  See id; Taylor,
885 S.W.2d at 156.

Self-Defense
Instruction

            Appellant
obtained a self-defense instruction at trial, but sought an additional
instruction that, if followed by the jury, would have authorized him to employ
deadly force.  The trial court denied the requested instruction, which
Appellant argues was error.

            A
person is justified in using force against another when and to the degree he
reasonably believes the force is immediately necessary to protect himself
against the other’s use or attempted use of unlawful force.  Tex. Penal Code Ann. § 9.31(a) (Vernon
Supp. 2010).  A person is justified in using deadly force against another (1)
if he would be justified in using force against the other under section 9.31,
(2) if a reasonable person in the actor’s situation would not have retreated,
and (3) when and to the degree he reasonably believes the deadly force is immediately
necessary to protect himself against the other’s use or attempted use of
unlawful deadly force.[6]  See Act of March 20, 2007, 80th
Leg., R.S., ch. 1, § 3, 2007 Tex. Gen. Laws 1, 2 (current version at Tex. Penal Code Ann. § 9.32 (Vernon
Supp. 2010)).   “ ‘Deadly force’ is force that is intended or known by
the actor to cause, or in the manner of its use or intended use is capable of
causing, death or serious bodily injury.”  Tex.
Penal Code Ann. § 9.01(3) (Vernon Supp. 2010).

The
defendant has the initial burden of producing some evidence on each of the
elements to justify submission of a deadly force self-defense instruction.  See
Tidmore v. State, 976 S.W.2d 724, 729 (Tex. App.–Tyler 1998, pet.
ref’d).  The trial court must give a jury instruction on a defensive theory
raised by the evidence regardless of whether such evidence is strong, feeble,
impeached, or contradicted, and even if the trial court is of the opinion that
the testimony is not entitled to belief.  See Ferrel v. State, 55
S.W.3d 586, 591 (Tex Crim. App. 2001).  On the other hand, if the evidence,
viewed in a favorable light, does not establish an element of the defense, an
instruction is not required, and the trial court does not err in refusing to
provide it. Id. 

In
the instant case, Appellant testified that Hawthorne was the aggressor and that
he struck Appellant, forcing Appellant to defend himself.  Ordinarily, the
defendant’s testimony alone is sufficient to raise a defensive issue requiring
an instruction in the jury charge.  Hayes v. State, 728 S.W.2d
804, 807 (Tex. Crim. App. 1987).  And here, the trial court agreed and
instructed the jury on self-defense.  The question on appeal, though, is
whether Appellant was justified in employing deadly force in defending
himself.[7]

Assuming
that, Appellant was correct that Hawthorne struck Appellant first, Hawthorne’s
taking swings at or actually punching Appellant, under the circumstances
presented in this case, does not constitute deadly force sufficient to justify
Appellant’s deadly force self-defense.  See Ogas v. State, 655
S.W.2d 322, 324 (Tex. App.–Amarillo 1983, no pet.) (holding that a blow to the
face with an open or closed hand does not justify deadly force); see also Bundy
v. State, 280 S.W.3d 425, 435 (Tex. App.–Fort Worth 2009, pet. ref’d). 
It is clear from the evidence that once the Mustang stopped and Appellant and
Hawthorne exited the vehicle, Hawthorne at some point became unable to defend
himself.  Yet, Appellant continued to viciously beat him to an unrecognizable
state.  Furthermore, the Mustang stopped in front of Appellant’s uncle’s home,
and Appellant could have retreated to that location given his admission in
describing the fight that he was “too fast” for Hawthorne.  But Appellant did
not attempt to retreat until after he had further pummeled the fallen and
unconscious Hawthorne.  A charge on self-defense is unwarranted if there is a
lack of evidence showing that a reasonable person would not have retreated.  Riddle
v. State, 888 S.W.2d 1, 7 (Tex. Crim. App. 1994).  There is a lack of
such evidence here.

Thus,
we conclude that the evidence in this case fails to raise a defensive issue
because Appellant failed to produce some evidence that would authorize him to
employ deadly force.  Therefore, we hold that the trial court did not abuse its
discretion in refusing to submit an instruction on self-defense in the jury
charge. 

            Appellant’s
third issue is overruled.

Disposition

            We affirm
the judgment of the trial court.

                                                                                    
JAMES T. WORTHEN    

                                                                                            
 Chief Justice

 

Opinion delivered December 15, 2010.

Panel consisted of
Worthen, C.J., Griffith, J., and Hoyle, J.

(DO NOT PUBLISH)









[1] Hawthorne
and Appellant had been friends for approximately twelve years at the time of
Hawthorne’s death.  Hawthorne was married to Appellant’s cousin at one time,
and they had two children.  The couple ultimately divorced, but Appellant and
Hawthorne remained close friends.  

 





[2]
Lewis was a friend of Hawthorne.





                [3] 443 U.S. 307, 315-16, 99 S. Ct.
2781, 2786-87, 61 L. Ed. 2d 560 (1979).





[4]
922 S.W.2d 126, 134 (Tex. Crim. App. 1996).





[5] When an indictment alleges differing methods of
committing a single offense in the conjunctive, the jury may be properly
charged in the disjunctive.  Kitchens v. State, 823 S.W.2d 256,
258 (Tex. Crim. App. 1991).  Moreover, an indictment may contain as many
paragraphs as are necessary to allege the various manner and means of
committing one alleged offense.  Callins v. State, 780 S.W.2d
176, 182-83 (Tex. Crim. App. 1986).

 





[6] We recognize that since Appellant’s conviction, the
Texas Legislature has amended the self-defense provisions of the penal code to
omit the “retreat” requirement that was formerly part of section 9.32(a)(2).  See
Act of March 20, 2007, 80th Leg., R.S., ch. 1, § 3, 2007 Tex. Gen. Laws 1, 2
(current version at Tex. Penal Code Ann.
§ 9.32 (Vernon Supp. 2010)).  However, the amendments apply only to
offenses committed on or after September 1, 2007.  See Act of March 20,
2007, 80th Leg., R.S., ch. 1, § 5(a), 2007 Tex. Gen. Laws 1, 2.  The
offense in the instant case occurred on August 13, 2007.  

 





[7]
In our analysis of this issue, we considered all sources of relevant evidence
of record, not just Appellant's testimony.  See, e.g., McDonald v. State,
No. 12-01-00034-CR, 2002 WL 89075, at *2 n.1 (Tex. App.–Tyler Jan. 23, 2002,
pet. ref’d) (per curiam, not designated for publication).