B. L. "Stormy" BLACK, Appellant,

v.

The STATE of Texas, Appellee.

No. 61390.

Court of Criminal Appeals of Texas, Panel No. 3.

June 9, 1982.

Rehearing Denied Sept. 15, 1982.

John B. McDonald, Palestine, for appellant.

Melvin D. Whitaker, Dist. Atty., Palestine, Robert Huttash, State's Atty., Austin, for the State.

Before ODOM, TOM G. DAVIS and DALLY, JJ.

## OPINION

TOM G. DAVIS, Judge.

Appeal is taken from a conviction for aggravated robbery. V.T.C.A. Penal Code, Sec. 29.03. After finding appellant guilty, the jury assessed punishment at 10 years.

In appellant's third ground of error he challenges the sufficiency of the evidence. Appellant maintains "the district court erred in failing to set aside the conviction because there was insufficient evidence to establish that the victim suffered a serious bodily injury."

Clarence Curtis Jamerson, the complainant, testified as to the circumstances surrounding the robbery. He stated that he had been selling preludin, a controlled substance, in the town of Palestine for several months. Jamerson had purchased approximately 200 preludin pills in Houston shortly before the robbery. He related that a coworker had told him that he wished to buy 100 preludin and a sale was arranged. When Jamerson arrived at the predetermined site for the transaction the co-worker had two other companions with him, one of which was identified by Jamerson as the appellant. Jamerson accompanied the trio in their car, ostensibly on a trip to retrieve the necessary money for the drug purchase. He was driven .9 or 10 miles to an unfamiliar backwoods area outside of Palestine. When the co-worker parked the car Jamerson was hit in the back of the head with a pistol. Jamerson testified he then fell out of the car and the appellant and the other companion pulled his pants down to his knees and began going through his pockets. In the course of going through his pockets, he stated the appellant shot him in the thigh.

The only evidence relating to the severity of the victim's wound is recorded in his own

testimony.[1] After testifying that he was robbed of some pills and $500.00 he stated:

"Q. [State's attorney] All right. Then did they say anything else to you when they got your money and your pills?

"A. No, sir.

"Q. What did you do next then?

"A. Ran off.

"Q. Did they let you go?

"A. Yes. His pistol was still on me. I just took off.

"Q. Where did you run to?

"A. Some lady's house.

"Q. About how far did you run?

"A. About a mile and a half or two miles.

" . . .

"Q. And then what happened?

"A. We went to the hospital.

"Q. Who took you to the hospital?

"A. Herman Bell.

"Q. All right. When you got to the hospital what did they do for you there?

"A. Gave me a tetanus shot and then the doctor found a slug and said I'd have to have surgery.

"Q. Did you have surgery?

"A. Yes, sir.

"Q. Where the bullet went in did it also have a coming out place, or just the one hole?

"A. It just had one hole. I got the surgery scar.

"Q. Surgery scar?

"A. Yes.

"Q. How long did you stay in the hospital?

"A. I think it was three days.

"Q. How long was it before your leg healed up?

"A. A couple of months. Two or three months.

"Q. How long was it before you were able to return to work?

"A. I haven't went to work.

"Q. You didn't go back to work here?

"A. No, sir.

"Q. How long have you been out in California?

"A. A year."

The blow to the head was minor and did not create any permanent damage. Jamerson, however, dropped his pants for the jury so that they could see the resultant scar left from the shooting.

■ The indictment under which appellant was charged alleged serious bodily injury, stating that: "While in the course of committing theft and with intent to obtain property of Clarence Jamerson, to-wit: United States currency, without the effective consent of the said Clarence Jamerson and with intent to deprive the said Clarence Jamerson of said property, *did then and there intentionally and knowingly cause serious bodily injury* to Clarence Jamerson by shooting him with a gun." (Emphasis Supplied). Thus, in order to prove aggravated robbery, the State had the burden of showing that serious bodily injury resulted from appellant's acts.[2] Compare, *Davis v. State*, Tex.Cr.App., 557 S.W.2d 303, and *Robinson v. State*, Tex.Cr.App., 553 S.W.2d 371 with *Sidney v. State*, Tex.Cr.App., 560 S.W.2d 679.

■ Serious bodily injury is defined in V.T.C.A. Penal Code, Sec. 1.07 as meaning: "Bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily

---

1. Additional testimony elicited from the sheriff's deputy who took Jamerson to the hospital, and the woman who called police for Jamerson, confirm he was bleeding from the thigh. No other testimony, however, showed the severity of the wound.

2. V.T.C.A. Penal Code, Sec. 29.03, Aggravated Robbery, states that a person commits an offense if he commits robbery as defined in Sec. 29.02 of the Code, and also:

"(1) causes serious bodily injury to another; or

"(2) uses or exhibits a deadly weapon."

member or organ." The injury to Jamerson's thigh was not shown to have created a substantial risk of death or serious permanent disfigurement. Jamerson's testimony did not indicate a protracted loss or impairment of a bodily member.

The record reflects Jamerson ran 1½ to 2 miles after being shot and that he subsequently spent three days in the hospital recovering from surgery on the wound. Although Jamerson testified the leg took two to three months to heal, he did not indicate he had any loss of use of the limb. The State offered no hospital records, nor did they call the physician, surgeon or nurse who administered to his wound. Likewise, there is no evidence to indicate Jamerson was unable to walk after leaving the hospital or that he had suffered permanent damage to his thigh. The evidence, when viewed in the light of the requirements of Sec. 1.07, supra, is insufficient to prove the element of *serious* bodily injury. *Sanchez v. State*, Tex.Cr.App., 543 S.W.2d 132, see *Robinson v. State*, Tex.Cr.App. 553 S.W.2d 371. Compare *Boney v. State*, Tex.Cr.App., 572 S.W.2d 529.

■ In *Ex Parte Harris*, Tex.Cr.App., 600 S.W.2d 791 this Court was confronted with a similar problem. There we stated:

"In *Moss v. State*, 574 S.W.2d 542 (Tex.Cr.App.1978) (appellant's motion for rehearing), we held that, once this Court has found the evidence insufficient on an alleged aggravating element, retrial on the lesser included offense is not precluded. See *Rogers v. State*, 575 S.W.2d 555 (Tex.Cr.App.1979)." Id. at 792–93.

The appellant may be retried for the offense of robbery. The judgment is reversed and the cause remanded.

DALLY, Judge, concurring.

I concur in the result reached; however, I seriously question whether the indictment properly alleges either robbery or aggravated robbery. In the event of a new trial the indictment should be reviewed to determine that it properly alleges the offense of robbery in view of the evidence to be offered. Cf. *Ex parte County*, 577 S.W.2d 260

(Tex.Cr.App.1979); *Williams v. State*, 524 S.W.2d 73 (Tex.Cr.App.1975). See also Article 12.05, V.A.C.C.P.; *Jackson v. State*, 489 S.W.2d 565 (Tex.Cr.App.1973); and *Cooper v. State*, 527 S.W.2d 563 (Tex.Cr.App.1975).