In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-00-00053-CR


______________________________




CHARLES LANCE TAYLOR, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 8th Judicial District Court


Franklin County, Texas


Trial Court No. 7,164




 




Before Cornelius, C.J., Grant and Ross, JJ.


Opinion by Justice Grant



O P I N I O N


 Charles Lance Taylor appeals his conviction for intoxication assault arising from an
automobile accident, contending the evidence adduced at trial was legally and factually insufficient
to support a finding of serious bodily injury.

 On January 6, 1999, Taylor drove his car into the oncoming lane of traffic, resulting in a two-car collision. Misty Dawn Ragsdale, the driver of the other car, was trapped inside her car with her
legs pinned up under the seat and the dashboard pushing in against her stomach. It took the fire
department at least an hour to disassemble the vehicle and extract her. After she was extracted from
the wreckage, she was transported to the emergency room with injuries to her left ankle, left arm,
the big toe on her right foot, and her hipbone.

 In our review of the legal sufficiency of the evidence, we employ the standards set forth in
Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560, 573 (1979), and Geesa v.
State, 820 S.W.2d 154 (Tex. Crim. App. 1991), and look to see whether, after viewing the evidence
in the light most favorable to the prosecution, any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt. In circumstantial evidence cases, if the fact
finder's conclusion is warranted by the combined and cumulative force of all the incriminating
circumstances, then the evidence is sufficient. Johnson v. State, 871 S.W.2d 183, 186 (Tex. Crim.
App. 1993). In our review of the factual sufficiency of the evidence, we view all the evidence and
set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be
clearly wrong and unjust. Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996); Lisai v.
State, 875 S.W.2d 35, 37 (Tex. App.-Texarkana 1994, pet. ref'd); Stone v. State, 823 S.W.2d 375,
381 (Tex. App.-Austin 1992, pet. ref'd, untimely filed). In both sufficiency reviews, the trier of fact
may draw reasonable inferences and is the exclusive judge of the witnesses' credibility and the
weight to give their testimonies. See Jones v. State, 944 S.W.2d 642, 647-49 (Tex. Crim. App.
1996); Bruno v. State, 922 S.W.2d 292, 293 (Tex. App.-Amarillo 1996, no pet.).

 Intoxication assault requires serious bodily injury defined as "injury that creates a . . . serious
permanent disfigurement or protracted loss or impairment of the function of any bodily member or
organ." Tex. Pen. Code Ann. § 49.07 (Vernon Supp. 2001). The disfiguring and impairing quality
of the injury is determined as the injury was inflicted, not taking into account the ameliorative effects
of medical treatment. See Brown v. State, 605 S.W.2d 572, 575 (Tex. Crim. App. [Panel Op.] 1980),
overruled on other grounds, Hedicke v. State, 779 S.W.2d 837, 840 (Tex. Crim. App. 1989). 
Although surgery is not evidence of serious bodily injury per se, Black v. State, 637 S.W.2d 923
(Tex. Crim. App. [Panel Op.] 1982); Webb v. State, 801 S.W.2d 529 (Tex. Crim. App. 1990),
evidence regarding details of the surgery may support an inference regarding the character of the
injury as inflicted. Fleming v. State, 987 S.W.2d 912, 917 (Tex. App.-Beaumont 1999), pet. dism'd,
21 S.W.3d 275 (Tex. Crim. App. 2000) (a metal plate attached to victim's pelvis with six screws
supported inference that at the time of injury, both the leg and the pelvis would have been unable to
support victim's weight). To be considered "protracted," the loss or impairment should be
continuing, drawn out, extended, lengthy, lingering, never-ending, or ongoing. See Moore v. State,
739 S.W.2d 347, 352 (Tex. Crim. App. 1987). A period of recuperation does not elevate a bodily
injury to a serious bodily injury. Hernandez v. State, 946 S.W.2d 912 (Tex. App.-El Paso 1997, pet.
ref'd) (injury requiring surgery and doctor's orders not to work for six weeks). 

 When an injury has received immediate medical treatment eliminating possible disfigurement
or impairment, whether or not the injury constituted serious bodily injury as inflicted may have to
be proven by circumstantial evidence from which the jury is allowed to make reasonable inferences. 
While expert testimony as to the extent and effects of the injuries regarding their disfiguring or
impairing quality has been found sufficient, such testimony is not necessary where the injuries and
their effects are obvious. See Carter v. State, 678 S.W.2d 155 (Tex. App.-Beaumont 1984, no pet.)
(victim's testimony that bullet entered mouth, passed through tongue, and went into top of mouth was
sufficient without need for expert testimony); see also Hart v. State, 581 S.W.2d 675 (Tex. Crim.
App. [Panel Op.] 1979) (evidence that the stab wound to the stomach required twenty stitches was
sufficient). The jury may use common sense and apply common knowledge, observation, and
experience gained in the ordinary affairs of life when giving effect to the inferences that may
reasonably be drawn from the evidence. Tidmore v. State, 976 S.W.2d 724, 730 (Tex. App.-Tyler
1998, pet. ref'd). If conflicting inferences exist, we must presume the trier of fact resolved any
conflict in favor of the prosecution. Id. 

 The paramedic who arrived at the scene of the accident described Ragsdale's left ankle and
leg as swollen and rotated or twisted outward. The physician confirmed that Ragsdale's left ankle
bone was fractured as well as her left arm, but that the bones were still properly aligned. Ragsdale
testified about an injury to her hipbone that was making it difficult to sit or stand for long periods
of time, but the physician did not treat Ragsdale for a hip injury. Her medical records state that no
acute fracture was shown in the hip joints.

 Ragsdale's big toe on her right foot was dislocated during the accident. She described it as
pulled out of the socket and straight up in the air. She could not walk on that foot prior to medical
treatment. The paramedic described the toe as deformed, out of place, and at a deformed angle. The
initial treating physician determined that the toe was dislocated. She testified that the toe had been
completely knocked off of the foot-bone, although it was an internal injury. She described it as
similar to an injury you would get playing basketball, but also that it was significant and very painful
when asked if it were just a jammed toe or a serious injury. After consulting with an orthopedic
surgeon, the physician splinted the toe and transferred Ragsdale to the hospital because the surgeon
thought he might have to relocate the toe surgically.

 Ragsdale stayed in the hospital for three days, during which time the injuries were repaired.
The ankle and arm were placed in casts, but there was no description of the procedure required to
reposition the toe. Although Ragsdale testified that she was unable to use her arm, ankle, or foot for
a period of time after the accident, the physician testified that Ragsdale had regained function of the
toe by the time she visited the physician again in February. The physician testified that she did not
know of any protracted problems Ragsdale experienced from the injuries and that she had no
knowledge of any permanent disfigurement. She also testified that it was possible Ragsdale could
have further complications with the toe in the form of pain and arthritis despite the medical
treatment. 

 Viewing the evidence in the light most favorable to the prosecution, the toe injury and its
immediate effects were obvious based on the evidence presented. Both Ragsdale and the paramedic
described the appearance of the toe injury. Ragsdale testified that she could not walk on that foot
prior to treatment. The treating physician confirmed that the toe was dislocated and completely
removed from the foot-bone. A conclusion regarding the long-term effects of the injury as inflicted
would have been based on the circumstantial evidence provided, including the immediate effects of
the injury, the physician's testimony that the injury was significant, that she called a surgeon to ask
about appropriate treatment, and that the surgeon believed surgery would be required to reposition
the toe. The combined and cumulative force of all of the evidence warranted the inference that such
disfigurement or impairment would have been permanent or prolonged or that it would not have been
permanent or prolonged. These inferences would have been reasonable and based on more than a
modicum of evidence. When competing inferences are possible, it is assumed that the jurors
resolved the inference in favor of the verdict. See Tidmore, 976 S.W.2d at 730. Therefore, the
evidence was legally sufficient to support a finding of serious bodily injury. 

 In viewing all of the evidence, the verdict is not so contrary to the overwhelming weight of
the evidence as to be clearly wrong and unjust. The physician's comment that the wound was the
kind you could get playing basketball provides little information as to the severity of the injury,
because both minor and severe injuries may result from playing such a sport. Additionally, the
physician's testimony that she did not know of any protracted problems or permanent disfigurement
Ragsdale experienced from the injuries when Ragsdale visited her a month after the accident pertains
to the state of the injuries after medical treatment had been rendered. Whether an injury constitutes
a serious bodily injury is determined as the injury was inflicted, not taking into account the
ameliorative effects of medical treatment. See Brown, 605 S.W.2d at 572. Therefore, the evidence
was factually sufficient to support the finding of serious bodily injury. 

 Because the evidence regarding the toe injury was sufficient to support the finding of serious
bodily injury, the evidentiary sufficiency of the other injuries involved need not be discussed. 

 Taylor's single point of error is overruled, and the judgment of the trial court is affirmed.




 Ben Z. Grant

 Justice


Date Submitted: November 8, 2001

Date Decided: February 6, 2002


Publish



minal Appeals has construed this rule to require a request for a
limiting instruction at the time of the admission of the evidence. Hammock v. State, 46
S.W.3d 889, 894 (Tex. Crim. App. 2001). 
[W]hen an extraneous offense is admitted in the guilt phase of a trial, failing
to give a limiting instruction at the time of admission may result in the jury
drawing inferences about the defendant's guilt based upon character
conformity, a use of the evidence that was not contemplated by the trial
court.

Jackson v. State, 992 S.W.2d 469, 478 (Tex. Crim. App. 1999). A defendant not only has
the burden of requesting a limiting instruction at the time the evidence is admitted, the
defendant also has the burden of requesting such an instruction in the court's charge to
the jury. Varelas, 45 S.W.3d at 631 n.3. When a defendant properly requests a limiting
instruction, the trial court errs in not giving it. Id. at 631. 
          As noted above, in responding to Jackson's motion to strike the testimony
concerning the attempted theft, the trial court stated that the testimony was admissible for
the purpose of showing Jackson's identity and continuing course of conduct. These
statements, however, were outside the presence of the jury. If Jackson's counsel had
requested the court to instruct the jury that it could consider this testimony only for those
limited purposes, the trial court would have been required to give that instruction. See id. 
The record in this case, however, is silent as to why trial counsel did not request such an
instruction to the jury. Trial counsel testified at the hearing on Jackson's motion for new
trial and acknowledged he did not make such a request. However, he was not asked—and
he did not volunteer—why he did not request a limiting instruction. We decline to
speculate as to what his explanation might have been.
          Because trial counsel is presumed to have rendered adequate assistance and made
all significant decisions in the exercise of reasonable professional judgment, and because
the decision not to request a limiting instruction could have been legitimate trial strategy,
we must conclude, in the face of a silent record, that Jackson failed to meet his burden of
showing that his trial counsel's assistance in this regard was ineffective. 
          Jackson also contends his trial counsel was ineffective in failing to show to all the
witnesses a picture of his brother-in-law, Freddy Royal, whom Jackson claims was the
person who committed the crime. A private investigator, appointed by the trial court at the
request of appellate counsel, testified at the hearing on Jackson's motion for new trial that
he showed a picture (presumably after the trial) of Royal to several of the victims and that
two of them identified Royal as the person who actually committed the crime. Jackson
complains the only person at his trial who was shown a picture of Royal was a defense
witness. Jackson argues that, if his trial counsel had shown Royal's picture to all the
victims, he could have established serious doubts about those victims' in-court
identification of him. He contends this failure deprived him of the effective assistance of
counsel.
          Again, the record is silent as to the reasons for trial counsel's conduct. Counsel
acknowledged at the hearing on Jackson's motion for new trial he did not show the picture
to each and every witness, but he was not asked—and he did not volunteer—why he so
acted. Such conduct could clearly be legitimate trial strategy, and we cannot hold, based
on this silent record, that such conduct denied Jackson reasonably effective assistance of
counsel.
          Nonetheless, the evidence of Jackson's identity as the perpetrator of these crimes
was sufficient for the jury to find him guilty beyond a reasonable doubt. Four victims made 
positive identifications of Jackson in the courtroom as the person who stole from them. 
One of these victims testified the person who stole from him had a scar on his left arm. 
Jackson displayed his arm to the victim in open court, and the victim identified it as the
same one he saw on the person who stole from him. Three victims also identified Jackson
at the scene of his arrest. One alleged victim could not make a positive identification of
Jackson in court or at the scene of his arrest.
          If it is true, as the investigator testified at the hearing on the motion for new trial, that
two of the victims identified a picture of Royal as the person who stole from them, then
perhaps Jackson's counsel could have "muddied the water" by showing that picture to all
the victims at trial. However, in the absence of any evidence as to why counsel acted as
he did, we cannot say Jackson was denied effective assistance of counsel by counsel's
failure to show Royal's picture to all the witnesses. 
          Having concluded Jackson was not denied effective assistance of counsel, we also
conclude the trial court did not abuse its discretion in denying Jackson's motion for new
trial.
          We affirm the judgment.


                                                                           Donald R. Ross
                                                                           Justice

Date Submitted:      September 22, 2004
Date Decided:         January 5, 2005

Do Not Publish