**AFFIRM; and Opinion Filed April 3, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-00270-CR

**MACK MCKINLEY WARD, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 7**
**Dallas County, Texas**
**Trial Court Cause No. F-1263580-Y**

## MEMORANDUM OPINION

Before Justices Lang, Stoddart, and Schenck
Opinion by Justice Schenck

Appellant Mack McKinley Ward appeals his conviction for aggravated robbery. In five issues, Ward challenges the sufficiency of the evidence to support his conviction, complains of error in the jury charge, and contends the trial court lacked jurisdiction to enter judgment. Because all dispositive issues are settled in law, we issue this memorandum opinion. TEX. RS. APP. P. 47.2(a), 47.4.

### BACKGROUND

Appellant challenges the sufficiency of the evidence only as to the jury's finding of "serious bodily injury." We therefore limit our discussion to the evidence pertinent to that finding.

On December 16, 2012, Rick Holtwisch was working at a CVS Pharmacy in Dallas. Holtwisch was the assistant store manager. In mid-afternoon, Holtwisch saw appellant enter the

store with a red duffel bag. Holtwisch observed appellant walking through the store and concealing merchandise in the duffel bag. When appellant proceeded to the front of the store, heading to the exit, Holtwisch approached appellant and asked to see the contents of the duffel bag. Appellant refused and kept walking. Holtwisch followed, continuing to ask appellant to stop and to show him the contents of the bag. Appellant ignored Holtwisch and exited the store. Because Holtwisch was still following him, appellant turned and hit Holtwisch, then grabbed him and slammed his body into the pavement. Appellant then fled.

Holtwisch was unable to get up from the pavement. He crawled back into the store and "got up into" a chair until police and paramedics arrived. Holtwisch's pelvis was fractured in two places and his hip was broken. He had surgery the next day, and remained in the hospital for three days. He used a wheelchair and a walker after the surgery, and underwent physical therapy. Eight weeks after the surgery, Holtwisch's doctor determined that his injuries were not healing properly. The six pins inserted during the surgery "were not holding and the bone was not healing properly." Holtwisch had a second surgery to insert longer and additional pins as well as a plate. He remained in the hospital for two days. He testified that his recovery period was fifteen to sixteen weeks. His injuries were painful and he could not walk on his own. He testified that he will always have two pins from the first surgery and the additional pins from the second surgery in his leg. He had no limp before December 16, 2012, but at the time of trial he waked with a limp, was still on light duty at work, and received an 18 percent impairment rating in connection with his worker's compensation claim. He testified that no further surgery was scheduled and he hoped to continue to heal. But he testified that he still suffers pain from his injuries, especially when he stands for too long.

Christine Felder witnessed the event from her car and testified at trial. She testified that appellant ran out of the store with Holtwisch following, and that appellant then "attacked"

Holtwisch. She testified that she saw appellant hitting Holtwisch with the red bag, then grabbing Holtwisch's arm and "slamming him on the ground." Holtwisch fell to the ground and was unable to get up. Appellant ran away. Felder called the police, and when they arrived, she reported what she had seen.

Officer Brian Lee Vogel responded to the emergency call and testified at trial. He testified that Holtwisch had trouble standing while being interviewed after the incident and had pain in his right hip. But Vogel "did not know the full extent of [Holtwisch's] injuries." Officer James Lee Thompson, a police detective, was assigned to investigate the case. He testified at trial that when he learned Holtwisch had broken his pelvis in two places and also broken his leg, he changed the charge to aggravated robbery based on Holtwisch's serious bodily injuries.

Dr. Allen Jones, Holtwisch's orthopedic surgeon, testified that he performed surgery on Holtwisch within a day of the injury. X-rays showed fractures of Holtwisch's pelvis and hip. Dr. Jones explained that these fractures are usually very painful, and he considers them to be serious bodily injury. Holtwisch remained in the hospital for a few days after the surgery "for pain control." Holtwisch was instructed not to bear any weight on his right leg for three or four months after the surgery. Dr. Jones explained that Holtwisch's hip fracture was in the "thermal neck" at the top of his femur. He testified that "[t]he problem with breaking your thermal neck is that it doesn't heal very well and the consequences are usually significant," such as failure to heal, arthritis, subsequent surgery, and permanent impairment. Holtwisch did require a second surgery when his hip failed to heal and some of the screws used to repair the thermal neck broke. In addition, "his bone got a little crooked from it not being healed." Dr. Jones described the second surgery as a "bigger operation" than the first surgery. Again Holtwisch was instructed not to put weight on the leg, and Dr. Jones prescribed pain medication because "[t]here's no way to have that kind of surgery without a significant amount of pain." Dr. Jones testified that he

–3–

continued to see Holtwisch as he underwent rehabilitation and through the time of trial. Dr. Jones explained that Holtwisch still walked with a limp due to muscle weakness and as a consequence of having the fractures and two surgeries. He testified that "I would expect him to improve, but not necessarily ever get back to normal." In response to the question whether Holtwisch had "impairment and disfigurement of his limbs," Dr. Jones testified:

> A. I would certainly say that his function is impaired and, you know, he has a scar. And if we measured the length of his legs accurately, one of them is probably going to -- his right one is going to be a little shorter than the other just because of everything that's going on. So I will say yes.
>
> Q. So do you think that he will have to -- that one leg being shorter than the other, do you think it will be like that for the rest of his life?
>
> A. Yes.

Appellant testified at both phases of the trial. He admitted stealing from the store, but denied any physical contact with Holtwisch. The jury found appellant guilty of aggravated robbery and assessed punishment at seventeen years' imprisonment. This appeal followed.

## DISCUSSION

### A. Sufficiency of evidence

In his first issue, appellant contends that no rational jury could have found the existence of serious bodily injury beyond a reasonable doubt. We review the sufficiency of the evidence of a criminal offense for which the State has the burden of proof under the standard set forth in *Jackson v. Virginia,* 443 U.S. 307 (1979). *Matlock v. State,* 392 S.W.3d 662, 667 (Tex. Crim. App. 2013). We examine all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson,* 443 U.S. at 319; *Matlock,* 392 S.W.3d at 667. We are required to defer to the jury's credibility and weight determinations because the jury is the

sole judge of the witnesses' credibility and the weight to be given their testimony. *See Jackson,* 443 U.S. at 326.

"Serious bodily injury" is defined in section 1.07(a)(46) of the Texas Penal Code as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." TEX. PENAL CODE ANN. § 1.07(a)(46) (West Supp. 2014).

Appellant argues that because Holtwisch's injury was not "protracted," it did not meet the definition of "serious" bodily injury, but only constituted bodily injury under section 1.07(a)(8) of the Penal Code. He relies on *Black v. State*, 637 S.W.2d 923 (Tex. Crim. App. 1982), in which the court concluded that a gunshot wound to the thigh did not constitute serious bodily injury because the leg healed within two or three months without any loss of use. Appellant also cites *Moore v. State*, 739 S.W.2d 347 (Tex. Crim. App. 1987), and *Sanchez v. State*, 543 S.W.2d 132 (Tex. Crim. App. 1987), in support of his argument.

In *Black*, *Moore*, and *Sanchez*, however, there was little or no evidence to support a finding that the loss or impairment in question was "protracted." In *Black*, as noted, there was no evidence of loss of use, and the victim's leg healed within two or three months. *Black*, 637 S.W.2d at 926. The court also cited the State's failure to offer any hospital records or any testimony from a physician or other health care provider. *Id.*

In *Moore*, appellant hit the complainant in the face and stabbed him with a knife. *Moore*, 739 S.W.2d at 347. The evidence showed, however, that the complainant was not immediately aware that he had been stabbed, and although he was treated in the emergency room, he was not hospitalized. *Id.* at 349. There was no other evidence that the complainant "was ever seen, much less treated, by another physician for the wounds he had sustained." *Id.* The State offered the testimony of the emergency room physician, who testified about the wounds, the stiches

required, and the risk of infection. *See id.* But there was no evidence to support a finding of serious permanent disfigurement, protracted loss or impairment of the function of any bodily member or organ, or substantial risk of death. *Id.* at 351.

In *Sanchez*, appellants were convicted of aggravated assault of Ernesto Flores. There was no evidence in either Flores's hospital records or his testimony "that his injuries created a substantial risk of death nor [was] there any evidence of permanent disfigurement" from the assault by the appellants. *See Sanchez*, 543 S.W.3d at 134. The State did not call Flores's doctor to testify. *See id.* The doctor, called by appellants to testify at the hearing on their motion for new trial, testified that he did not consider Flores's injuries "as serious." *Id.* Flores did not suffer from any serious permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ. *Id.* The doctor explained that Flores's stay in the hospital had been for observation and to ensure that he did not have any other complications. *Id.* The court concluded it was "highly questionable that the evidence is sufficient to show serious bodily injury to constitute the felony offense charged." *Id.*

In contrast, the testimony of both Holtwisch and his doctor showed that Holtwisch's injuries were serious, were likely to have permanent consequences, and in any event had been protracted, causing pain and difficulty in walking and requiring two surgeries. Holtwisch was still under the doctor's care at trial on February 12, 2014, over a year after his injury, still walked with a limp, and still suffered pain. While there was no testimony that Holtwisch's injuries were life-threatening, the evidence supported a finding of a "protracted loss or impairment of the function of any bodily member or organ" as defined in section 1.07(a)(46) of the Texas Penal Code. We decide appellant's first issue against him.

**B. Jury charge**

Appellant's second, third, and fourth issues assert error in the jury charge. Because appellant did not object to the charge at trial, we review his complaints to determine if any error in the charge was "fundamental" and caused "egregious harm." *See Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013) (explaining applicable standards of review).

### 1. Definitions of "intentionally" and "knowingly"

In his second issue, appellant contends the trial court erred "by failing to limit the definitions of intentionally and knowingly to the relevant conduct elements of the underlying offense" in the jury charge. There are three "conduct elements" which may be involved in an offense: (1) the nature of the conduct, (2) the result of the conduct, and (3) the circumstances surrounding the conduct. *Cook v. State*, 884 S.W.2d 485, 487 (Tex. Crim. App. 1994). The culpable mental state definitions in the charge must be tailored to the conduct elements of the offense. *Id.*

Appellant argues that even though all three conduct elements are involved in the offense of aggravated robbery, the trial court must limit the definitions in the jury charge to the conduct element of the offense to which they apply. He contends that the application paragraph of the charge did not limit the culpable mental states to their relevant conduct elements; specifically, he argues that the "application [paragraph] does not describe the manner and means Appellant used to commit the robbery there is no limiting language, only general."

Assuming there is error, we examine the charge to determine if the defendant suffered "egregious harm." *Ash v. State*, 930 S.W.2d 192, 195 (Tex. App.—Dallas 1996, no pet.). We consider (1) the charge itself; (2) the state of the evidence including contested issues; (3) argument of counsel; and (4) any other relevant information. *Id.* The court of criminal appeals has found no harm in a trial court's failure to limit mental-state definitions as long as, when viewed in factual

context, it is apparent which conduct element applies to which element of the offense. *See Patrick v. State*, 906 S.W.2d 481, 493 (Tex. Crim. App. 1995); *Hughes v. State*, 897 S.W.2d 285, 296 (Tex. Crim. App. 1994).

> The application paragraph of the charge provided:
>
> Now, if you find from the evidence beyond a reasonable doubt that on or about the 16th day of December, 2012, in Dallas County, Texas, the defendant, MACK MCKINLEY WARD, did then and there intentionally or knowingly, while in the course of committing theft of property and with intent to obtain or maintain control of said property, cause serious bodily injury to another, RICK HOLTWISCH, hereinafter called complainant, by striking or pushing said complainant causing him to strike the ground or pavement, then you will find the defendant guilty of aggravated robbery.

In this paragraph, the mental states "intentionally or knowingly" directly modify the result of the conduct (causing serious bodily injury). *See Ash*, 930 S.W.2d at 195. Contrary to appellant's assertion, the application paragraph also specifically describes the manner and means of committing the offense ("caus[ing] serious bodily injury" to Holtwisch "by striking or pushing said complainant causing him to strike the ground or pavement"), and is similar to the language in *Ash* appellant attempts to contrast. *See id.* ("The application portion of the charge, which specifically describes the manner and means of committing the offense, *i.e.*, committing bodily injury by 'striking the complainant's head repeatedly against the pavement,' would tend to limit the culpable mental states to the result of appellant's conduct."). We conclude this statement sufficiently limited the culpable mental states of "intentionally" or "knowingly" to their relevant conduct element, result of conduct. *See id.* At trial, appellant admitted stealing items from the store. The only contested issue was whether appellant touched Holtwisch at all, not whether he acted with the culpable mental state. As in *Ash*, "[f]rom our examination of the record, we cannot conclude that appellant suffered egregious harm" from any error in the jury charge. *See id.* We decide appellant's second issue against him.

–8–

## 2. Definition of "reasonable doubt"

In his third issue, appellant contends the trial court erred by including a definition of reasonable doubt in the jury charge. The instruction in question read: "It is not required that the prosecution prove guilt beyond all possible doubt; it is required that the prosecution's proof excludes all 'reasonable doubt' concerning the defendant's guilt." We rejected this argument in *O'Canas v. State*, 140 S.W.3d 695, 700–02 (Tex. App.—Dallas 2003, pet. ref'd). In *O'Canas*, we considered whether an identical instruction impermissibly defined "reasonable doubt" under the court of criminal appeals' opinion in *Paulson v. State*, 28 S.W.3d 570, 572 (Tex. Crim. App. 2000). We concluded that the instruction "simply states the legally correct proposition that the prosecution's burden is to establish proof beyond a *reasonable* doubt and not *all possible* doubt." *O'Canas*, 140 S.W.3d at 702. Therefore, the instruction did not define reasonable doubt and the trial court did not err by including it in the jury charge. *Id.* We decide appellant's third issue against him.

## 3. Good conduct time

In his fourth issue, appellant argues the trial court erred by informing the jury about good conduct time because he was ineligible for good conduct time. He further argues that even though he failed to object, the "egregious harm" standard does not apply because the error was in violation of the United States Constitution. In *Luquis v. State*, 72 S.W.3d 355, 368 (Tex. Crim. App. 2002), the court examined these arguments and concluded there was no violation of an appellant's due process rights by instructing the jury in accordance with statute. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, section 4(a) (West Supp. 2014) (required instruction regarding parole and good conduct time). Similarly, in *Atkinson v. State*, 107 S.W.3d 856, 859–60 (Tex. App.—Dallas 2003, no pet.), we concluded that "[w]ithout evidence to the contrary, we may assume the jury was not confused or misled by the charge and did not consider the possibility of

good conduct time when assessing appellant's punishment." In *Atkinson*, as here, the jury charge specifically instructed the jury that, although a defendant may earn good conduct time, it could not be predicted how it might apply to appellant; therefore, the jurors were not to consider how good conduct time might affect appellant's sentence. *See id.* Under these circumstances, we cannot conclude that appellant suffered egregious harm or that the good conduct time instruction violated appellant's right to due process. *See id.* at 860. We decide appellant's fourth issue against him.

### C. Docket transfer

In his fifth issue, appellant contends the trial court lacked jurisdiction to hear the case and render judgment because the case was not transferred to its docket. The basis for appellant's argument is that the indictment in his case was presented to the 194th Criminal District Court of Dallas County; subsequently, the case appeared on the docket of Criminal District Court No. 7 of Dallas County, which conducted the trial and rendered judgment, but no transfer order was executed.

A grand jury formed and impaneled by a district judge inquires "into all offenses liable to indictment," and hears all the testimony available before voting on whether to indict an accused. TEX. CODE CRIM. PROC. ANN. art. 20.09, 20.19 (West 2005); *Ex parte Edone*, 740 S.W.2d 446, 448 (Tex. Crim. App. 1987). A grand jury is "often characterized as an arm of the court by which it is appointed rather than an autonomous entity." *Dallas Cnty. Dist. Attorney v. Doe*, 969 S.W.2d 537, 542 (Tex. App.—Dallas 1998, no pet.). After the conclusion of testimony, a grand jury votes "as to the presentment of an indictment." TEX. CODE CRIM. PROC. ANN. art. 20.19. Following presentment, an indictment is filed in a court with competent jurisdiction, i.e., jurisdiction to hear the case. *See Hultin v. State*, 171 Tex. Crim. 425, 434–35, 351 S.W.2d 248, 255 (1961).

In counties having two or more district courts, the judges of the courts may adopt rules governing the filing, numbering, and assignment of cases for trial, and the distribution of the courts' work they consider necessary or desirable to conduct the business of the courts. *See* TEX. GOV'T CODE ANN. §24.024 (West 2014); *see also* TEX. GOV'T CODE ANN. § 74.093 (West 2013) (addressing adoption of local rules of administration to provide, in part, for assignment, docketing, transfer, and hearing of all cases). Thus, a specific district court may empanel a grand jury, but it does not necessarily follow that all cases returned by the grand jury are assigned to the impaneling court. *See Bourque v. State*, 156 S.W.3d 675, 678 (Tex. App.—Dallas 2005, pet. ref'd).

While the record shows the grand jury that returned the aggravated robbery indictment was presided over by the 194th Judicial District Court, the case was thereafter filed in Criminal District Court No. 7. We take judicial notice that both of these courts are located in Dallas County. Nothing in the record indicates this case was ever filed in or appeared on the trial docket of the 194th Judicial District Court. Because Criminal District Court No. 7 had jurisdiction to hear appellant's case and render judgment, we decide appellant's fifth issue against him.

## CONCLUSION

Having overruled appellant's five issues, we affirm the judgment of the trial court.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

140270F.U05

–11–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MACK MCKINLEY WARD, Appellant

No. 05-14-00270-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 7, Dallas County, Texas
Trial Court Cause No. F-1263580-Y.
Opinion delivered by Justice Schenck,
Justices Lang and Stoddart participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 3rd day of April, 2015.