

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0679-21

### VITAL GARCIA, Appellant

### v.

### THE STATE OF TEXAS

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FOURTEENTH COURT OF APPEALS
### HARRIS COUNTY

SLAUGHTER, J., delivered the opinion of the Court in which KELLER, P.J., HERVEY, RICHARDSON, YEARY, KEEL, WALKER, and MCCLURE, JJ., joined. NEWELL, J., concurred.

## O P I N I O N

In January 2019, a jury convicted Appellant Vital Garcia of first-degree aggravated assault on a family member resulting in serious bodily injury for shooting his then-girlfriend with a firearm. *See* TEX. PENAL CODE § 22.02(a), (b)(1). The question we must answer is whether the court of appeals improperly acted as a thirteenth juror by concluding that the evidence was insufficient for the jury to find that the two gunshot wounds inflicted

on the victim caused serious bodily injury, namely, because neither bullet hit a vital organ. Here, the evidence presented to the jury demonstrated that the victim sustained two gunshot wounds to her thigh and chest; she suffered significant bleeding to the point that she blacked out and believed she would die; her injuries were described as "deep lacerations" which required twelve surgical staples to close; and her treating physician believed that her wounds constituted "serious bodily injury." Considering the cumulative force of the evidence and allowing the drawing of reasonable inferences, we conclude that the evidence was sufficient to support the jury's finding that the victim faced a substantial risk of death as a result of her injuries. Therefore, the court of appeals erred by concluding that the jury acted irrationally in finding that the victim suffered serious bodily injury. We reverse the lower court's judgment and remand for further proceedings.

## I.    Background

### A.    Historical Facts

Appellant and Marissa Melendez were in a romantic relationship and shared an apartment in Houston. At the time of the offense, they had been dating for a little less than a year. The relationship started off fine but soon took a turn for the worse when Appellant became physically and verbally abusive. Appellant frequently threatened to kill Melendez if she ever cheated or left him. Because Appellant carried a loaded .40 caliber handgun with him "24/7," Melendez believed his threats and was afraid of him.

On May 25, 2016, Appellant came home early from work to find Melendez smoking marijuana in the living room with a male friend. Appellant went into the bathroom and Melendez heard him cock his handgun. He then came out and began shooting at Melendez and the man. Melendez tried to run to the kitchen, but Appellant shot her through the back

of her right thigh. She was able to remain standing and made her way to the kitchen. Appellant then fired at the man, who jumped through the second-floor balcony window to escape.[1] Appellant turned his focus back to Melendez and trapped her in the kitchen. He told her he was going to kill her, and she believed that he would. Appellant then shot Melendez in the right side of her chest from a close distance and fled from the apartment.

Melendez was bleeding, but conscious. She testified that she did not call 911 because she was in shock. Instead, she grabbed her keys, phone, and wallet and went to her car, thinking she could make it to the hospital. Melendez drove one or two blocks when she saw a police car on the side of the road. Realizing that she would not be able to make it to the hospital on her own, she pulled over and asked the officer for help. The officer then called for an ambulance. Melendez testified that the last thing she remembers before blacking out is entering the ambulance. She told the jury that she thought she was going to die.

There was also testimony from a security guard for the apartment complex who saw Melendez trying to drive away from the scene. The security guard stopped her and told her she was "bleeding" and needed to wait for him to call an ambulance. He then got into the car with her. He testified that she was "driving with one hand" while applying pressure to one of her gunshot wounds with the other hand. He eventually got out of the car when she stopped to seek help from a police officer on the side of the road.

---

[1] The man was shot multiple times but also survived the incident.

The Houston Fire Department (HFD) responded to assist Melendez. HFD emergency medical records indicate that Melendez was "ambulatory on scene" and "conscious and alert" when HFD arrived. The records note that Melendez appeared to have gunshot wounds to her right breast and right upper thigh and that each appeared to have an entry and exit wound. She received treatment for bleeding[2] as well as occlusive dressing on the breast gunshot wound. Melendez was transported as a priority two[3] emergency to the hospital, and records note that her condition remained unchanged during transport.

Once at the hospital, Melendez was treated by emergency physician Dr. Jordan Smith. According to her medical records that were admitted at trial, she suffered "multiple deep lacerations to the right thigh and right breast"—two entry and two exit wounds—which required twelve staples in total to close. The medical records further indicate that the laceration to her right superior breast was 1.5 centimeters long and was repaired with 1 staple; the right lower breast laceration was 3 centimeters long and was repaired with 4 staples; the right anterior thigh laceration was 4 centimeters long and was repaired with 5 staples; and the right lateral thigh laceration was 2 centimeters long and was repaired with 2 staples. The records state that Melendez was "neurovascularly intact in all four extremities. Chest x-ray negative for intrathoracic injury and right femur x-ray negative for bony injury. Doubt vascular injury given the location of the entrance and exit wounds." The records also indicated the presence of several small, scattered bullet fragments in the

---

[2] The EMS record indicates that Melendez was treated for bleeding with "4x4's," but the record does not explain what this means.

[3] There was no explanation provided either through testimony or the admitted exhibits of what a "priority two" transport designation meant.

right leg. Melendez reported experiencing pain measured as high as an eight out of ten, and she was given Hydrocodone and Toradol to alleviate her discomfort. Melendez's wounds did not require surgery and she was discharged from the hospital after a few hours. She still bears scars from her injuries.

In his testimony at trial, Dr. Smith stated that Melendez presented with "two gunshot wounds: one through the right breast," and one "through the right thigh with a retained bullet." He cleaned and repaired four wounds through staple closure. Dr. Smith explained to the jury that a gunshot wound can cause serious bodily injury and even death. He testified that he has seen patients die from gunshot wounds to the chest. Dr. Smith also told the jury that, based on the location of Melendez's wounds, he believed she sustained serious bodily injury. He noted that, although the bullets did not strike any of her vital organs, the bullets' paths were close to her ribs, which have "a lot of vessels right underneath . . . as well as [the vessels] in her thorax." He noted that the bullets had struck in close proximity to her heart, lungs, aorta, vena cava, femur, femoral artery, and femoral vein.

Several photographs of the crime scene were also introduced at trial. Blood can be seen on the walls, blinds, and soaked into the carpet, as well as on a pillow and towel. No photographs of Melendez's injuries before or after medical treatment were introduced.

Following the conclusion of evidence, the jury convicted Appellant of first-degree felony aggravated assault with a deadly weapon of a family member resulting in serious bodily injury. *See* TEX. PENAL CODE § 22.02(a), (b)(1). Appellant pleaded "true" to an enhancement allegation of a prior felony conviction for indecency with a child, and the trial court sentenced him to 35 years' imprisonment.

**B.     On Appeal**

On direct appeal, Appellant contended that the evidence was insufficient to establish that Melendez suffered serious bodily injury or that she was Appellant's family member. He also complained that the trial court erred in refusing to submit a jury instruction on the lesser-included offense of second-degree aggravated assault. In a 2-1 decision, the court of appeals agreed that the evidence was insufficient to support the jury's finding that Melendez suffered serious bodily injury, and it reversed Appellant's conviction. *See Garcia v. State*, 631 S.W.3d 875, 877 (Tex. App.—Houston [14th Dist.] 2021). Because the court sustained Appellant's complaint with respect to the element of serious bodily injury, it did not reach his second argument pertaining to the evidence of a family/dating relationship, nor did it reach the second point of error addressing the denial of the lesser-included-offense instruction. *Id.* at 880, 882 n.1.

In holding the evidence insufficient to support the jury's finding of serious bodily injury, the court reasoned that there was no evidence that the bullets "hit any vital organs or caused any serious or lasting impairment or disfigurement." *Id.* at 880. It also noted that, although Melendez testified that she thought she was going to die, she did not explain the basis for that belief. *Id.* Additionally, the court gave considerable weight to the EMS records stating that Melendez was conscious at the scene and that her condition remained unchanged during the transport to the emergency room. *Id.* at 879–80.

The court of appeals also concluded that Dr. Smith's testimony was insufficient to show that Melendez suffered serious bodily injury. Although he testified "that he thought her wounds constituted serious bodily injury, . . . he was not asked about and expressed no

opinion regarding the statutory criteria for serious bodily injury." *Id.* at 881. The court continued, explaining that Dr. Smith "was not asked and did not indicate what would or could have happened with [C]omplainant's wounds had she not received medical care." *Id.* Finally, the court observed that the treatment Melendez received "was relatively brief and nonintrusive," and she was released from the hospital after three hours and twenty minutes. *Id.* Ultimately, the court of appeals reversed and remanded the case to the trial court with instructions to reform the conviction to second-degree aggravated assault and hold a new punishment hearing. *Id.* at 877.

Justice Poissant dissented. *Id.* at 883–85. In her view, the evidence was sufficient for a rational trier of fact to have found that Melendez was exposed to a substantial risk of death as a result of the gunshot wounds, thereby establishing the element of serious bodily injury. *Id.* at 883 (noting that Melendez "suffered two gunshot wounds near vital organs, bled profusely, lost consciousness, required emergency room treatment, has bullet fragments in her right thigh, and has scars from the bullet wounds. The testimony of the emergency room physician who treated Complainant established both that the Complainant suffered serious bodily injury and that her injuries could have caused Complainant's death.").

We granted the State's petition for discretionary review to answer the following question: "Whether the Fourteenth Court of Appeals improperly acted as a 'thirteenth juror' by re-evaluating the weight and credibility of the evidence showing that the [C]omplainant's gunshot wounds constituted serious bodily injury?"

## II. Analysis

We reject the court of appeals' conclusion that the evidence was insufficient to support the jury's finding that Melendez suffered serious bodily injury. The court of appeals failed to view the evidence in the light most favorable to the verdict and impermissibly substituted its own judgment for that of the factfinder. Applying the appropriate level of deference and considering the cumulative force of the evidence, we find that the jury could have rationally inferred that Melendez's gunshot wounds posed a substantial risk of death, such that the element of serious bodily injury was satisfied.

## A.      Standard of Review

In assessing the sufficiency of the evidence to support a conviction, we consider the evidence in the light most favorable to the verdict and determine whether, based on the evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Whatley v. State*, 445 S.W.3d 159, 166 (Tex. Crim. App. 2014). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. A proper review of evidentiary sufficiency considers the cumulative force of the evidence. *See Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012).

When considering a claim of evidentiary insufficiency, a reviewing court does not sit as the thirteenth juror and may not substitute its judgment for that of the factfinder by reevaluating the weight and credibility of the evidence. *Isassi v. State*, 330 S.W.3d 633,638 (Tex. Crim. App. 2010). The jury acts as the sole judge of the credibility of the witnesses

and may choose to believe all, some, or none of the testimony presented. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). "Furthermore, the trier of fact may use common sense and apply common knowledge, observation, and experience gained in ordinary affairs when drawing inferences from the evidence." *Acosta v. State*, 429 S.W.3d 621, 625 (Tex. Crim. App. 2014). If the record supports conflicting inferences, the reviewing court must "presume that the factfinder resolved the conflicts in favor of the prosecution" and defer to the jury's factual determinations. *Wise*, 364 S.W.3d at 903 (quoting *Jackson*, 443 U.S. at 326). In other words, when there are two reasonable interpretations of the evidence, the factfinder's choice between them cannot be clearly erroneous. *Anderson v. City of Bessemer*, 470 U.S. 564, 574 (1985).

We measure the sufficiency of the evidence against the hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The "hypothetically correct jury charge accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Alfaro-Jimenez v. State*, 577 S.W.3d 240, 244 (Tex. Crim. App. 2019). "As authorized by the indictment" means the statutory elements of the offense as modified by the charging instrument. *Id*.

### B. Aggravated Assault and Serious Bodily Injury

Here, Appellant was charged with and convicted of first-degree aggravated assault on a family member. A person commits ordinary assault if he "intentionally, knowingly, or recklessly causes bodily injury to another." TEX. PENAL CODE § 22.01(a)(1). The offense

is elevated to first-degree aggravated assault if "the actor uses a deadly weapon during the commission of the assault and causes serious bodily injury to a person whose relationship to or association with the defendant is described by Section 71.0021(b), 71.003, or 71.005, Family Code"—i.e., a family member, a member of the defendant's household, or a person with whom the defendant has a "dating relationship." *Id.* § 22.02(b)(1); TEX. FAM. CODE §§ 71.0021(b), 71.003, 71.005.

Thus, based on the statutory language as modified by the indictment, the hypothetically correct jury charge here would include the following elements: (1) Appellant; (2) knowingly or intentionally; (3) caused serious bodily injury to Melendez; (4) who was a member of Appellant's household or a person with whom he had a "dating relationship;" and (5) in doing so, he used a deadly weapon. Given the scope of the ground on which we granted review, we will consider only the third element—whether a rational juror could have found, beyond a reasonable doubt, that Melendez suffered serious bodily injury as a result of Appellant's conduct.

The Penal Code defines "bodily injury" as "physical pain, illness, or any impairment of physical condition." TEX. PENAL CODE § 1.07(a)(8). It further defines "serious bodily injury" as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id*. § 1.07(a)(46).

In examining sufficiency questions surrounding the element of serious bodily injury, this Court's precedent has indicated that the degree of risk posed by the injury, or the disfiguring or impairing qualities of the injury, should be evaluated based on the injury as

inflicted, rather than after the ameliorating effects of medical treatment. *Pruett v. State*, 510 S.W.3d 925, 929 (Tex. Crim. App. 2017). Specifically, in *Blea v. State*, we noted that the definition of serious bodily injury plainly "refers to the injury caused by the offender, and it does not require consideration of any medical treatment that may have lessened the impact of the injury." 483 S.W.3d 29, 34 (Tex. Crim. App. 2016). Thus, in determining whether a bodily injury creates a substantial risk of death, a court should consider "the disfiguring and impairing quality of the bodily injury as it was inflicted on a complainant by an offender," and should "not consider the amelioration or exacerbation of an injury by actions not attributable to the offender, such as medical treatment." *Id.* at 34–35.

Moreover, we have recognized that expert medical testimony is not strictly required to establish serious bodily injury. *Blea,* 483 S.W.3d at 35 (observing that "serious bodily injury may be established without a physician's testimony when the injury and its effects are obvious"). We have further observed that an injured person's lay testimony about the seriousness of her injuries may support a finding of serious bodily injury. *See Wade v. State*, No. PD-0157-20, 2022 WL 1021056, at *7 (Tex. Crim. App. 2022) ("We have previously held that a lay witness's opinion testimony supported a finding of serious bodily injury . . . . '[A] person who has received injuries is qualified to express an opinion on the seriousness of those injuries.'") (citing and quoting *Hart v. State*, 581 S.W.2d 675, 676 (Tex. Crim. App. 1979)). And, jurors are permitted "to apply common sense, knowledge, and experience gained in the ordinary affairs of life in drawing reasonable inferences from the evidence presented to it in order to conclude that a particular injury constitutes 'serious bodily injury.'" *Id.* at *6.

**C.** **Application – The evidence was sufficient to establish serious bodily injury.**

In view of the foregoing law and substantive principles, and viewing the evidence in the light most favorable to the verdict, we conclude that the jury was not irrational in concluding that Melendez's gunshot wounds posed a substantial risk of death and thus constituted serious bodily injury. The record in this case shows that Melendez sustained two gunshot wounds from close range to her chest and right thigh. She testified that she was bleeding, and this was corroborated by the photos of the apartment taken in the aftermath of the shooting which showed a significant amount of blood around the apartment, as well as by the testimony of the security guard who indicated that Melendez was still bleeding as she was driving away from the scene. After attempting to drive herself to the hospital, Melendez realized she would not be able to make it there on her own and sought help from a police officer on the side of the road. She testified that she does not remember anything after the ambulance arrived, suggesting that she either lost consciousness or was in shock and blacked out. She also testified that she thought she would die.

Melendez's EMS and medical records show that she sustained two gunshot wounds, each producing an entry and exit wound ranging in size from 1.5 to 4 centimeters. She received immediate treatment from EMS to help alleviate bleeding. Once at the hospital, she received emergency treatment from Dr. Smith, who cleaned and stapled each of the four wounds, using a total of twelve staples. Dr. Smith testified that he believed Melendez suffered serious bodily injury as a result of her injuries:

Prosecutor:    And can a gunshot wound cause serious bodily injury?

Dr. Smith:    Yes, it can.

Prosecutor:    Can a gunshot cause death?

Dr. Smith:    Yes, it can.

Prosecutor:    Based on the location of Ms. Melendez's gunshot wounds, would you consider that serious bodily injury?

Dr. Smith:    Yes, I would.

. . . .

Prosecutor:    Approximately how many gunshot wounds would you say you've treated over the years of you being a doctor?

Dr. Smith:    Hundreds.

Prosecutor:    And out of those hundreds, have you seen death occur?

Dr. Smith:    Yes.

Prosecutor:    Have you seen deaths occur from being shot in the thigh area?

Dr. Smith:    Not that I remember specifically.

Prosecutor:    Have you seen deaths occur from being shot in the chest area?

Dr. Smith:    Yes.

In view of the totality of this evidence, we cannot agree with the court of appeals that the jury lacked a sufficient basis for finding serious bodily injury. In reaching this conclusion, we emphasize that the definition for serious bodily injury looks to the nature of the injury as inflicted, not after the ameliorating effects of medical treatment. *See Blea*, 483 S.W.3d at 34–35. Focusing solely on the nature of Melendez's injuries prior to her receiving medical treatment, the gunshot wounds produced deep lacerations that caused significant bleeding and resulted in Melendez losing consciousness. Dr. Smith indicated that gunshot wounds can cause death, and he opined that the injury here was indeed serious bodily injury. Viewing this evidence in its totality, the jury was free to apply its own common sense and knowledge of this type of injury to conclude that, absent timely medical

treatment to control bleeding and clean and repair the wounds, Melendez would have faced a substantial risk of death. There is nothing speculative about permitting the jury to draw these reasonable inferences under the circumstances of this case.

The flaw in the court of appeals' opinion, broadly speaking, is that it failed to view the evidence in the light most favorable to the verdict and failed to permit the drawing of reasonable inferences by the jury. For example, the court of appeals disregarded Melendez's testimony that she lost consciousness or blacked out, noting instead that the EMS records contradicted this testimony by stating that Melendez was alert upon arrival. *See Garcia*, 631 S.W.3d at 880. But the EMS reports do not necessarily negate Melendez's statement that she blacked out at some point while in the ambulance. And even if they did, "[w]hen the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict, and we defer to that determination." *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014).

Further, the court of appeals seemed to focus on what the evidence failed to show, and ways in which the evidence could have been stronger, rather than analyzing whether the basic facts adduced were sufficient to permit the jurors to rationally infer the existence of serious bodily injury. For example, the court of appeals focused on the fact that Melendez did not appear to have received a blood transfusion and that the treatment she received "was relatively brief and nonintrusive." *Garcia*, 631 S.W.3d at 880–81. It also emphasized what it perceived to be weaknesses in Dr. Smith's testimony, noting that he "was not asked about and expressed no opinion regarding the statutory criteria for serious bodily injury," did not testify that "any of [C]omplainant's vital organs were hit or

otherwise impacted by the bullets," and "did not indicate what would or could have happened with [C]omplainant's wounds had she not received medical care." *Id.* at 881. But the fact that Melendez received prompt and effective medical treatment does not diminish the severity of her wounds as of the time they were inflicted. With respect to Dr. Smith's testimony, while he could have provided a more detailed explanation of *why* he believed Melendez's wounds amounted to serious bodily injury, this does not mean that his conclusion stating that he believed this *was* serious bodily injury, coupled with the basic facts of Melendez's injuries, constituted an insufficient basis for the jury to conclude that the statutory standard was met. We also disagree with the court of appeals' implicit suggestion that the statute requires a showing that a vital organ was struck to establish serious bodily injury under these circumstances. While evidence showing that a vital organ *was* struck by a gunshot would likely suffice to meet the statutory standard, that is not a necessary condition for finding serious bodily injury. Instead, the sole relevant inquiry is whether the injury as inflicted "creates a substantial risk of death." TEX. PENAL CODE § 1.07(a)(46).

Finally, the court of appeals relied on several decisions to support its holding, but we find those decisions to be readily distinguishable. For example, in *Williams v. State*, the complainant was shot in the lower back, buttocks, and thigh. 696 S.W.2d 896, 897 (Tex. Crim. App. 1985). The State offered no expert testimony concerning the risk or severity of the injuries and the victim did not testify to the extent of his injuries. *Id.* We observed there that "[n]o testimony, whatsoever, was offered to prove serious bodily injury." *Id.* at 898. Similarly, in *Black v. State*, the State did not offer any testimony from the treating

physician, nor did it offer any hospital records. 637 S.W.2d 923, 926 (Tex. Crim. App. [Panel Op.] 1982). The victim's testimony about his injury, a gunshot wound to the thigh, was limited in scope and did not address the severity of the wound. *Id.* Further, the focus of *Black* was on whether the injury constituted a protracted loss or impairment, rather than posing a substantial risk of death. *Id.* Given these distinctions, we cannot agree with the lower court's reliance on these cases to support its holding.

## III.    Conclusion

Viewing the evidence in the light most favorable to the jury's verdict, we conclude that it was sufficient to establish the element of serious bodily injury. The court of appeals erred by focusing on the weaknesses in the State's case, rather than on whether the jury could have relied on the basic facts to draw reasonable inferences about the existence of serious bodily injury without the ameliorating effects of medical treatment. Considering the cumulative force of the evidence and allowing the drawing of reasonable inferences by the jury, the evidence was sufficient to support a finding that Melendez faced a substantial risk of death as a result of two gunshot wounds to the thigh and chest. We therefore reverse the judgment of the court of appeals and remand the case for consideration of Appellant's remaining arguments raised on appeal.

DELIVERED: January 11, 2023

PUBLISH